277 P.2d 265

John PINTEK, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona IN AND FOR the COUNTY OF COCHISE and Honorable William C. Truman, one of the Judges thereof, Respondents.

No. 5986.

Supreme Court of Arizona.

Dec. 7, 1954.

Darrel G. Brown, Tucson, for petitioner.

William C. Truman, Florence, in pro. per., and W. Shelley Richey, Douglas, for respondents.

UDALL, Justice.

This is an original proceeding in prohibition initiated by John Pintek (et al.), as petitioners, directed against the Superior Court of the State of Arizona in and for the County of Cochise and Honorable William C. Truman, of Florence, Arizona, presiding therein. We issued an alternative writ to test the right and propriety of Judge Truman to preside in the trial of two separate but related matters, the one a probate estate matter and the other a guardianship proceeding.

We expressly held in the case of Conkling v. Crosby, 29 Ariz. 60, 66, 239 P. 506, 508, that "[p]rohibition is available to challenge the qualification of the judge as well as the jurisdiction of the court."— hence there is no question as to petitioner's right to test this matter by this method.

At the outset it should be pointed out that section 38–2007, A.C.A.1939, of the Probate Code provides that procedure in civil actions are applicable to and constitute the rules of practice in handling decedents' estates. In turn, section 42–143, A.C.A. 1939, specifies: "[t]he provisions relating to the estates of decedents, so far as they relate to the practice in the superior court apply to guardianships."

Alvena M. Stover died testate on July 9, 1952, at Douglas, Arizona, leaving an estate in Cochise County and two surviving adopted children, viz.: John Anthony Stover, aged 13 years and Mary Ellen Stover, aged 11 years. By the terms of her non-intervention will a trust as to all her property was created with the two minors as the cestuis que trustent. The petitioner here, John Pintek, a Bisbee attorney, was named both executor and trustee, and in addition was nominated by decedent as guardian of the person of said minors. Decedent's will was duly admitted to probate on August 5, 1952 and letters testamentary issued to petitioner and he qualified as such executor. On the same day in the guardianship proceedings petitioner was appointed and qualified as guardian of the person and estate of said minors. No bond was required in either matter.

For the sake of clarity, inasmuch as the procedural steps in the estate and guardianship matters are dissimilar, we shall treat them separately.

In the Matter of the Guardianship of John Anthony Stover and Mary Ellen Stover,

Minors, Superior Court No. 6550.

Karl M. Stover, a brother of Alvena M. Stover, deceased, on August 30, 1954 filed a verified petition for removal of John Pintek as guardian, and as grounds therefor alleged serious derelictions of duty and other misconduct on the part of the guardian. Honorable Gordon Farley, a visiting judge from Santa Cruz County, entered an order directing the guardian to immediately render a full and complete account and report and in addition cited him to appear and show cause on September 2, 1954, why he should not be removed as guardian of said minors. (On the same date a similar order, returnable at the same time, was entered upon a petition of similar import filed in the estate matter.)

For the purpose of this decision we shall assume, without deciding, that Karl M. Stover had a legal interest in these matters sufficient to entitle him to petition for the relief sought.

At the time appointed, with Judge Farley presiding, there appeared in this matter the following named parties: Karl M. Stover and his attorney, W. Shelley Richey; Guardian John Pintek and his attorney, Darrel G. Brown; Attorney John W. Ross who purportedly (though without court sanction) was representing the minors. Attorney Ross filed a motion to consolidate the two matters (No. 6550 and No. 6551), which motion was denied and he then filed an affidavit of bias and prejudice directed against Judge Farley. The following colloquy thereupon took place:

"The Court: And Mr. Ross, will you indicate your relationship in this matter?

"Mr. Ross: I am representing the minor children of the deceased.

"The Court: The minors or the guardian for the minors?

"Mr. Ross: No. I represent the children themselves.

"The Court: By what authority?

"Mr. Ross: By authority of the guardian who has asked me to represent the children, John Anthony Stover and Mary Ellen Stover.

"The Court: In other words you are representing the guardian?

"Mr. Ross: No, I am not representing the guardian; I represent the children at the request of the guardian, your Honor. It might show up if there is anything wrong here that I am opposed to Mr. Pintek.

"Mr. Brown: According to the petition, the interests of the guardian and the children might be at odds. I represent the guardian and Mr. Ross represents the children.

"The Court: That is a novel theory. I must admit I can't understand how you can represent to the Court, Mr. Ross, that you are representing the children and may be opposed to the interests of the guardian when the guardian appoints you, designates you to represent the children. I believe it is up to the Court, if anybody, to designate counsel for the children rather than the guardian under the circumstances of this case."

Shortly thereafter the Court stated:

"Mr. Ross, you also wanted to disqualify me in the guardianship matter. Although I am in doubt as to your legal right to do so, I am going to respect your opinion in the matter and let you file your Affidavit of Disqualification at this time."

and the following minute order was entered:

"Mr. Ross then filed an Affidavit of Prejudice against Judge Farley, *and Judge Farley disqualified himself,* and ordered this matter assigned to the Honorable W. C. Truman." (Emphasis supplied.)

The guardian maintains that he was not given an opportunity in the first instance to "be heard to urge his objections" as provided in section 21–109, A.C.A.1939, to the matter being assigned to Judge Truman. Be that as it may, insofar as the guardianship proceedings are concerned we deem it unnecessary to decide this question because it indisputably appears that prior to Judge Truman making any ruling on a litigated or contested matter, Darrel G. Brown as attorney for the guardian filed an affidavit of bias and prejudice against him. This the respondent judge refused to honor or recognize as a legal disqualification, taking the view that the affidavit filed by Attorney Ross for the minors exhausted the right of the guardian under sections 38–102 and 21–109, A.C.A.1939. The validity of the premise on which this ruling was made will be determinative of this phase of the case.

While an infant generally may sue or be sued, and is subject to and bound by

184

the same rules of procedure as an adult litigant, yet an infant cannot bring or defend a legal proceeding in person, but must sue or be sued by a legally appointed general guardian, or next friend or a guardian ad litem. See 43 C.J.S., Infants, § 103, and 27 Am.Jur., Infants, Sec. 116. In Chapter 42, Article I, A.C.A.1939, entitled "Estates of Minors and Incompetents", express provision is made by section 42–118 for the appointment of a guardian ad litem, procedure therefor to be as set forth in Rule 17(b), Rules Civ.Proc. (now appearing as section 21–502, A.C.A.1939).

In the instant case the minors involved had a general guardian of both their persons and estates, hence, not being sui juris in their own persons they had no right to appear by an attorney of their own choosing without first having obtained an order of the court appointing a next friend or guardian ad litem to act in their behalf. Judge Farley was therefore manifestly correct in challenging the authority of Attorney John W. Ross to appear for said minors or to question his right to sit as the trial judge. He need not have disqualified himself on the basis of any such affidavit as it had no legal force nor effect; his disqualification in legal effect was wholly voluntary. The real party in interest was guardian Pintek and he, not having filed an affidavit of bias and prejudice against Judge Farley, was entitled under the law (sections 38–102 and 21–107, A.C.A.1939) to make a peremptory challenge to Judge Truman sitting, and it was error for the latter not to step aside when his right to preside was timely challenged. As to the guardianship proceedings we hold that the alternative writ of prohibition should be made permanent.

### In the Matter of the Estate of Alvena Stover, Deceased, Superior Court No. 6551.

Upon the petition of decedent's brother, Karl M. Stover, containing allegations of misconduct and derelictions of duty on the part of executor Pintek, an order, dated August 30, 1954, was signed by Judge Farley directing the executor to " * * * appear before this court on the 2nd day of September at the hour of 10:00 o'clock, A.M., to render an Inventory and Appraisement herein as required by law" and to "show cause why he should not be immediately removed as executor * * *." This order and citation were served upon petitioner on the date filed.

When the matter came on for hearing before Judge Farley in addition to those shown to be before the court in the guardianship matter there appeared one Edward Chandler, an alleged mortgage creditor of the estate, and his attorney Enos P. Schaffer who filed a motion to intervene therein. No ruling was made upon this motion. However, Judge Farley properly questioned Chandler's right to be before the court.

Darrel G. Brown, attorney for executor Pintek, filed an affidavit alleging bias and.

prejudice on the part of the presiding judge, coupled with a demand that another judge be designated to hear the matter. While Judge Farley appeared to have been somewhat "nettled" over the filing of the affidavit and upbraided counsel for their dilatory tactics, nevertheless he recognized the disqualification and stated: " * * * I will hear from counsel as to their desires for another judge in the matter." Thereupon Attorney Brown suggested Judge W. E. Patterson of Yavapai County, and Attorney Richey in behalf of Stover announced he would like to have the matter assigned to Judge J. Mercer Johnson of Pima County. It is to be noted that as to these two suggested judges there was no meeting of the minds or stipulation on the part of counsel as to what judge should try the matter, hence the rule announced by this court in the case of Lane v. Ferguson, 62 Ariz. 184, 156 P.2d 236, has no application. Without commenting on their suggested choices, Judge Farley then stated:

"Now it is my understanding that Judge Truman is in Cochise County on another matter, and I at this time am going to assign it to him for immediate disposition if he will undertake the assignment."

Counsel made no protest or objection to this contemplated action. A recess was taken and apparently Judge Truman indicated to Judge Farley his willingness to accept the assignment as the following minute entry appears of record, viz.: "Judge Farley disqualified himself, and ordered this matter assigned to the Honorable W. C. Truman."

Upon Judge Truman assuming the bench he was met with a whole "flock" of affidavits of bias and prejudice filed by the following named parties:

1. Attorney Enos P. Schaffer in behalf of the creditor who had sought to intervene.

2. Attorney John W. Ross, who purportedly represented the minor heir, Mary Ellen Stover.

3. Mary Ellen Stover, a minor, in propria persona.

4. Attorney John Pintek, as guardian of Mary Ellen Stover, a minor.

We are of the opinion that Judge Truman properly swept aside and denied these efforts to disqualify him. On this record the creditor was a stranger to the proceeding and had no right to object, his petition to intervene had not been granted and even if it had been it is well settled law that an intervenor must take the case as he finds it and will not generally be allowed to assail the jurisdiction of the court. 39 Am.Jur., Parties, Sec. 79. As to affiants numbered 2 and 3, supra, what was said earlier in this opinion disposes of their claimed right to disqualify. John Pintek as executor effectually disqualified Judge Farley and that exhausted his right under the statute. There of course can be no

hostility between Executor Pintek and Guardian Pintek; to hold otherwise would create a "Dr. Jekyll and Mr. Hyde" situation.

Failing in their effort to disqualify Judge Truman, petitioner Pintek did obtain a continuance. He then sought and obtained from this court an alternative writ of prohibition and the matter, after having been fully briefed, is now before us for final disposition.

■ Petitioner now maintains that Judge Farley, in assigning the matter to respondent Truman, did not comply with the statute in that no opportunity was afforded the parties to object to the assignment and therefore respondent had no right to proceed to hear the matter. Section 21–109, supra, provides:

"Not more than one (1) change of venue or one (1) change of judge may be granted in any action, but *each party shall be heard to urge his objections* to any county or judge *in the first instance,* and the change of venue shall be to the most convenient county, or to the judge, to which the objections of parties do not apply or are least applicable. If the parties agree upon a county or judge, then such county or judge shall be selected." (Emphasis supplied.)

In construing this section previously we stated in the case of In re Estate of Sears, 54 Ariz. 52, 91 P.2d 874, 875:

"It seems to us that these provisions of the statute made it the duty of the court to give appellants an opportunity to object to [the judge to whom the cause was reassigned] before entering the order transferring the proceeding to him. *The statute is mandatory that the parties have an opportunity to object,* in the first instance, to a proposed judge, but the court is not bound by any objection made by the parties and may, in the exercise of a sound discretion, disregard objections." (Emphasis supplied.)

From the record it is clear that petitioner Pintek did have the opportunity to present his objections, if any, to assignment of the case to Judge Truman. Judge Farley heard the suggestions of the "parties", furthermore he apprised them of his intention in the matter. The court by its language did not specifically ask if there was any objection to Judge Truman, as properly it should have. Nevertheless we believe the petitioner, being in open court, could well have availed himself of the right to object to the proposed assignment at that time, or in chambers during the short recess before Judge Truman mounted the bench, and hence cannot now be heard to urge that he was deprived of this opportunity.

■ It further appears that by failing to apprise Judge Truman of this purported

defect affecting his right to sit, petitioner deprived himself of the right to prohibition. At no time was it suggested to Judge Truman that Judge Farley had made the assignment without according the parties the right to object thereto. In fact before a continuance was granted by Judge Truman an oral request for the appointment of appraisers was presented by petitioner, counsel stating:

"* * * I would like the Court to sign an order, *since the Court has jurisdiction,* an order appointing appraisers in this matter. (Emphasis supplied.)

The record reveals that this order was entered on the date of the hearing. Thereafter a motion for security for costs was filed.

It is well established that in order to avail one's self of the relief afforded by prohibition, the jurisdictional defect relied upon must be called to the attention of the lower court. As we stated in Conkling v. Crosby, 29 Ariz. 60, 239 P. 506, 510:

"Ordinarily, when any fact of disqualification is known to the litigants, but nevertheless the judge is proceeding to the trial or hearing of the cause without perhaps for the moment having in mind the fact or circumstance upon which the disqualification is based, common courtesy alone would suggest that the matter first be called to his attention that he may have the opportunity of withdrawing voluntarily. This court will always scrutinize carefully the whole situation when application is made for this extraordinary writ, and *in every case will refuse to grant it in the absence of a preliminary request made by the applicant to the lower court to withdraw voluntarily,* or of a plea to the jurisdiction, unless the applicant is able to show circumstances bringing himself within some exception to the general rule. The courtesy which counsel and litigants owe to the judiciary and the respect and consideration due to the courts of the state would prevent our doing otherwise. * * *" (Emphasis supplied.)

The alternative writ of prohibition insofar as the estate matter (No. 6551) is concerned should be quashed and it is so ordered. In the guardianship proceedings (No. 6550) the alternative writ of prohibition is made permanent.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concur.