947 P.2d 869

**Anthony CARDEN, a single man, Plaintiff–Appellant,**

v.

**GOLDEN EAGLE INSURANCE COM-PANY, a California corporation, Defendant–Appellee.**

**No. 1 CA-CV 96–0420.**

Court of Appeals of Arizona, Division 1, Department D.

June 10, 1997.

Review Denied Dec. 16, 1997.

Page & Hommel by Robert J. Hommel, Scottsdale, and Thomas C. Wilmer, Phoenix, for Plaintiff–Appellant.

Turley & Swan, P.C. by Joseph B. Swan, Jr., and Elizabeth Savoini Fitch, Phoenix, for Defendant–Appellee.

OPINION

THOMPSON, Presiding Judge.

This is an appeal from summary judgment awarded in favor of defendant-appellee Golden Eagle Insurance Company (Golden Eagle) in a declaratory judgment action filed to determine whether an employer who provides underinsured motorist insurance for its employees under Ariz.Rev.Stat. Ann. (A.R.S.) § 20–259.01(B) must purchase such insurance in equal amounts for all of its employees. The trial court concluded that it did not and that the insurance policy at issue was neither contrary to public policy nor Arizona law. Appellant Anthony Carden (Carden) disagrees. This is a matter of first impression in Arizona. We affirm the trial court's conclusion.

**FACTUAL AND PROCEDURAL HISTORY**

Carden was a car salesman for Berge Ford, Inc. On August 20, 1993, while demonstrating a car to prospective buyers, a third

party rear-ended the car in which Carden was riding. Carden's spine was injured in the accident. The third party was found at fault, and the third party's insurance carrier paid its policy limits to Carden for his injuries. Carden then sought payment from Golden Eagle under Berge Ford's underinsured motorist coverage (UIM). Eventually, Golden Eagle paid Carden the UIM policy limit of $100,000.

At the time of the accident, Golden Eagle insured Berge Ford under a policy that provided UIM coverage of $500,000 for seven specifically named key employees and only $100,000 in UIM coverage for the remaining employees of Berge Ford and the general public. The rationale, according to Scott Ellsworth, Berge Ford's comptroller, was that it made sense to purchase higher coverage for those employees driving company cars on a full-time basis and who did not have their own personal automobile insurance. According to Ellsworth, purchasing the higher limits for all employees of Berge Ford and the general public would have been prohibitively expensive.

Carden filed this lawsuit seeking, *inter alia*, declaratory judgment that appellee violated A.R.S. § 20–259.01 by providing disparate levels of UIM coverage to different employees, and therefore, that coverage in the amount of $500,000 should be imputed into the policy. Both Carden and Golden Eagle filed motions for summary judgment on the declaratory judgment count. The trial court granted Golden Eagle summary judgment, concluding that § 20–259.01 does not require named insureds, when electing to purchase UIM coverage, to purchase it in equal amounts for each insured under the policy. It therefore upheld Berge Ford's purchase of UIM coverage for its key employees in the amount of $500,000 and its remaining employees and members of the public in the amount of $100,000. The court entered final judgment as to this issue, and Carden timely appealed.

## DISCUSSION

The relevant facts pertaining to the underinsured motorist coverage issue are undisput-

ed. When reviewing a grant of summary judgment where the facts are undisputed, we determine whether the trial court correctly applied the substantive law to the undisputed facts. *Mancillas v. Arizona Property & Casualty Ins. Guar. Fund*, 182 Ariz. 389, 391, 897 P.2d 691, 693 (Ariz.App.1995).

In Arizona, insurance companies must offer UIM coverage as part of their automobile insurance policies:

> Every insurer writing automobile liability or motor vehicle liability policies shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.... At the request of the insured the insured may purchase and the insurer shall then include within the policy underinsured motorist coverage which extends to and covers all persons insured under the policy in any amount authorized by the insured up to the liability limits for bodily injury or death contained within the policy.

A.R.S. § 20–259.01(B) (Supp.1996).[1] The insured has the option of purchasing such coverage, but is not required to. *Id.* Carden argues that this means once Berge Ford elected to provide UIM coverage to its employees and the general public, it had to purchase such coverage in equal amounts for everyone; therefore, Golden Eagle cannot limit him to the lower coverage amount. We disagree.

The issue here is clearly one of statutory interpretation: Does A.R.S. § 20–259.01 require a named insured to provide equal amounts of UIM coverage to its other insureds once it elects to provide UIM coverage? "The cardinal rule of statutory construction is to ascertain and give effect to the legislative intent behind the statute." *Preferred Risk Mut. Ins. Co. v. Tank*, 146 Ariz. 33, 35, 703 P.2d 580, 582 (Ariz.App.1985)

---

1. Subsection (B) was formerly subsection (C) before the legislature amended § 20–259.01 in 1993. New subsection (B), however, is substantively identical to old subsection (C).

(citing *Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 293, 697 P.2d 684, 686 (1985)). The best way to do this is to look to the language of the statute when it is clear and unequivocal. *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993). The legislature's use of the singular form of "amount" does not evidence clear intent that all accident victims be provided with a uniform level of UIM coverage. One definition of "amount" is "the sum total of two or more quantities or sums; aggregate." Random House Dictionary of the English Language, Unabridged, 57 (2d ed. 1987).

Furthermore, the policy behind the statute does not support Carden's view. We have consistently recognized that the purpose of UIM coverage is to allow the insured to protect himself and his family and passengers from injuries caused by other motorists with insufficient insurance. *Preferred Risk*, 146 Ariz. at 35–36, 703 P.2d at 582–83. When "the insured exercises the right given him by the legislature and purchases the coverage the insurer is required to offer, we believe the same public policy considerations apply to underinsured motorist coverage as to uninsured motorist coverage." *Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 22, 770 P.2d 324, 326 (1989). The purpose of uninsured motorist coverage (UM) is to place the injured party in the same place he would have been had the tortfeasor possessed sufficient liability insurance. *Id.* "The same is true of underinsured motorist coverage. By virtue of A.R.S. § 20–259.01(C), innocent members of the public who have purchased underinsured motorist coverage are entitled to coverage as if the offending driver was insured in the amount of the underinsured policy limit." *Id.* The statute expressly allows, however, the purchaser to purchase UIM coverage in any amount up to the liability limits for bodily injury or death contained within the policy. The limitation in Berge Ford's policy does not infringe on this purpose. It simply limits how much Carden may recover as compared to other employees covered within the policy.

Carden is correct that in prior UIM cases, Arizona courts have struck down insurance provisions that have excluded certain insureds from UIM coverage once UIM coverage was selected. *See, e.g., Higgins*, 160 Ariz. 20, 770 P.2d 324 (striking down "other vehicle" exclusion, where UIM coverage purchased because exclusion violated public policy). These cases are distinguishable, however. In *Higgins*, for example, the supreme court struck down an "other vehicle" exclusion that denied UIM coverage when an insured under the policy was injured while operating a motorcycle that was not insured under the policy. 160 Ariz. at 21, 23, 770 P.2d at 325, 327. The court held that UIM coverage follows the person, and not the vehicle, so that once the insured elects to purchase UIM coverage, the insurance company cannot contractually exclude someone who would otherwise be insured. *Id.* at 22–23, 770 P.2d at 326–27. "'The risk being insured by each policy issued to an insured party is principally the risk of injury to himself or covered members of his household.' ... [O]ur legislature created the Uninsured Motorist Act for the protection of persons, not for the protection of vehicles." *Id.* at 23, 770 P.2d at 327 (quoting *Hilden v. Iowa Nat'l Mut. Ins. Co.*, 365 N.W.2d 765, 768 (Minn. 1985)). Here, Carden is not being denied coverage. Golden Eagle is not excluding him from coverage, only limiting the dollar amount he may recover.

Carden also notes that in *Employers Mut. Casualty Co. v. McKeon*, 159 Ariz. 111, 765 P.2d 513 (1988), the supreme court rejected an attempt to provide non-uniform awards of coverage for different insureds as violative of the mandatory offering terms of § 20–259.01. However, in *Employers Mutual*, the insured actually did purchase uniform coverage for all insureds. 159 Ariz. at 115, 765 P.2d at 517. The insured did not do so here.

Seeking to establish a disfavored status, based on public policy, for "exclusions, offset clauses, other insurance clauses, excess/escape clauses, and the like," Carden points us to several decisions involving UM or UIM coverages. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Duran*, 163 Ariz. 1, 785 P.2d 570 (1989). We find these decisions inapplicable to the situation here because they were decided in a context where coverage was mandatory. To require named insureds to purchase UIM coverage in equal amounts for all its covered employees may well prevent many from purchasing any UIM coverage. In addition, even if a named insured elected

to provide UIM coverage, it may then elect to buy the lowest amount possible due to the expense .of providing increased coverage. This would leave certain insureds for whom more coverage is needed, like Berge Ford's key employees, without sufficient UIM coverage.

## CONCLUSION

In the past, this court and the Arizona Supreme Court have struck down policy exclusions that completely denied an insured UM or UIM coverage to which the insured was entitled. *See Employers Mut. Casualty Co. v. McKeon,* 159 Ariz. 111, 765 P.2d 513 (1988) (holding named driver exclusion in UM policy violated public policy and § 20–259.01); *Higgins,* 160 Ariz. 20, 770 P.2d 324. That has not occurred here. Here, Carden has received UIM coverage; the coverage was limited in amount due to reasonable, economic concerns of his employer. Berge Ford's premiums reflect this difference in coverage. For these reasons, we affirm the trial court's grant of summary judgment for appellee Golden Eagle Insurance.

GARBARINO and GERBER, JJ., concur.