IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


KAREN M. MITCHELL,           )      2 CA-CV 2003-0131
                                        )      DEPARTMENT B
            Plaintiff/Appellant,   )
                                          )      O P I N I O N
                      v.           )
                                          )
JOHN D. GAMBLE and AARON      )
JENSEN,                           )
                                          )
            Defendants/Appellees.  )
                                          )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20020184

Honorable Deborah Bernini, Judge

REVERSED AND REMANDED

---

Piccarreta & Davis, P.C.
  By Carl A. Piccarreta                               Tucson
                          Attorneys for Plaintiff/Appellant

Goering, Roberts, Rubin, Brogna,
Enos & Hernandez
  By William L. Rubin and Laura Huntwork       Tucson
               Attorneys for Defendant/Appellee
                                          Gamble

  and

Law Office of James E. Abraham
  By Cynthia L. Choate                            Tucson
              Attorneys for Defendant/Appellee Jensen

P E L A N D E R, Presiding Judge.

**¶1** In this personal injury action, the primary issue on appeal is whether students who perform a routine errand at a teacher's request on school grounds during school hours can be deemed school "employees" under Arizona's Workers' Compensation Act. Although its facts and procedural history are simple, this case presents rather complicated legal issues of first impression in Arizona.

**¶2** Plaintiff/appellant Karen Mitchell, a middle school teacher, appeals from the trial court's grant of summary judgment in favor of defendants/appellees John Gamble and Aaron Jensen, both minors who attended the school where Mitchell taught. Mitchell argues the trial court erred in determining that appellees were "employed" by their school at the time of the incident in question and, therefore, that A.R.S. § 23-1022(A) precludes her negligence claims against them. We conclude that the limited record before us and the applicable law do not support summary judgment in favor of appellees and, accordingly, reverse the trial court's judgment.

## BACKGROUND

**¶3** In reviewing a grant of summary judgment, we view the facts and all reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was entered. *See Town of Miami v. City of Globe*, 195 Ariz. 176, ¶ 2, 985 P.2d 1035, 1037 (App. 1998). Although the material facts in the sparse record before us are undisputed, they are amenable to different inferences. On February 15, 2001, appellees were

eighth grade students and student council members at Townsend Middle School. During that day's student council meeting, one of appellees' teachers asked them to retrieve a "paper cart" from another room and bring it back to the student council room. As appellees were pushing the cart down the hallway about to pass the door to a classroom in which Mitchell had been eating lunch, Mitchell opened the door to leave the room. The cart hit the door which, in turn, struck Mitchell and injured her.

¶4        Mitchell later sought and obtained workers' compensation benefits as a result of the incident. In addition, she filed this action against appellees, claiming they had pushed the cart in a "negligent and reckless manner" and were personally liable for her injuries.[1] Appellees moved for summary judgment, arguing that, at the time of the incident, they had been acting as Mitchell's "co-employees," as defined in A.R.S. § 23-901(3), and within the scope of their employment. Thus, appellees argued, § 23-1022(A) barred Mitchell's tort

---

[1]We note that, apparently, no guardian, next friend, or guardian ad litem has been named or appointed on behalf of appellees, both minors. Our supreme court has stated, albeit in dictum, that a minor "cannot bring or defend a legal proceeding in person, but must sue or be sued by a legally appointed general guardian, or next friend or a guardian ad litem." *Pintek v. Superior Court*, 78 Ariz. 179, 184, 277 P.2d 265, 268 (1954) (also stating that minors "had no right to appear by an attorney of their own choosing without first having obtained an order of the court appointing a next friend or guardian ad litem to act in their behalf"); *see also Montaño v. Browning*, 202 Ariz. 544, ¶ 7, 48 P.3d 494, 497 (App. 2002) (a plaintiff may bring "a timely filed lawsuit against a minor defendant," but "once named as a defendant, a minor must have a court-appointed guardian ad litem or next friend only as a condition precedent to making an appearance"); Ariz. R. Civ. P. 17(g), 16 A.R.S., Pt. 1 ("The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."). Because neither the parties nor the trial court addressed this issue, we likewise do not do so.

action against them. In granting appellees' motion, the trial court found that they "were co-employees of [Mitchell] and 'employed' by Townsend Middle School at the time of the accident." Consequently, the court ruled, Mitchell's "exclusive remedy for any injuries she sustained was workers' compensation pursuant to A.R.S. § 23-1022(A)."

## DISCUSSION

### I.

¶5        Subject to certain exceptions, § 23-1022(A) provides: "The right to recover [workers'] compensation . . . for injuries sustained by an employee . . . is the exclusive remedy against the employer or any co-employee acting in the scope of his employment."[2] *See also* A.R.S. § 23-1024(A) ("An employee . . . who accepts compensation waives the right to exercise any option to institute proceedings in court against his employer or any co-employee acting within the scope of his employment . . . ."). Pursuant to those statutes, unless an employee who is injured on the job has previously rejected the workers' compensation system, the superior court lacks subject matter jurisdiction over any common law tort action that the employee files against a coemployee acting within the scope of his or her employment. *See Smithey v. Hansberger*, 189 Ariz. 103, 106, 938 P.2d 498, 501 (App. 1996); *see also Ringling Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Court*, 140 Ariz. 38, 41, 46, 680

---

[2]Although Mitchell alleged in her complaint that appellees had acted "negligent[ly] and reckless[ly]," she does not contend the "wilful misconduct" exception in § 23-1022(A) applies. *See generally Gamez v. Brush Wellman, Inc.*, 201 Ariz. 266, ¶¶ 5-11, 34 P.3d 375, 378-80 (App. 2001).

P.2d 174, 177, 182 (App. 1983).  Thus, by finding § 23-1022(A)'s exclusivity provision applicable, the trial court essentially determined it lacked subject matter jurisdiction of this case.

¶6         Our standard of review for that ruling requires some discussion.  We generally review de novo orders dismissing cases for lack of subject matter jurisdiction.  *Satterly v. Life Care Ctrs. of Am., Inc.*, 204 Ariz. 174, ¶ 5, 61 P.3d 468, 471 (App. 2003); *Hill v. Peterson*, 201 Ariz. 363, ¶ 5, 35 P.3d 417, 419 (App. 2001).  Although a trial court may consider and resolve jurisdictional fact issues when, as here, they are not intertwined with the merits of the case, we review the court's ultimate legal conclusion de novo.  *See Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App. 1991); *see also Bonner v. Minico, Inc.*, 159 Ariz. 246, 256, 766 P.2d 598, 608 (1988).  In any event, the parties did not request the trial court to resolve any jurisdictional fact issues, but rather, the case was disposed of on summary judgment.

¶7         The ultimate issue raised here is purely legal—whether § 23-1022(A) renders Arizona's workers' compensation system Mitchell's "exclusive remedy," thereby barring her tort action against appellees and depriving the trial court of subject matter jurisdiction.  Resolution of that issue, however, hinges on whether appellees were acting as school employees and, therefore, as Mitchell's coemployees, at the time of her injury.  This latter issue, though properly addressed by the trial court, *see Swichtenberg*, is a mixed question of law and fact.  Accordingly, we review de novo whether the trial court properly applied § 23-

5

1022 and on that basis entered summary judgment in favor of appellees. *See Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 69 P.3d 7, 11 (2003) ("We review de novo a grant of summary judgment . . . ."); *Gamez v. Brush Wellman, Inc.*, 201 Ariz. 266, ¶ 4, 34 P.3d 375, 378 (App. 2001) ("We review questions of law, including the interpretation of statutes and . . . mixed questions of fact and law de novo."); *Diaz v. Magma Copper Co.*, 190 Ariz. 544, 547, 950 P.2d 1165, 1168 (App. 1997) (same).

¶8        Summary judgment is proper only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2; *see also Orme Sch. v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). When, as here, the material facts are undisputed, "we determine whether the trial court correctly applied the substantive law to the undisputed facts." *Carden v. Golden Eagle Ins. Co.*, 190 Ariz. 295, 296, 947 P.2d 869, 870 (App. 1997). And, "[e]ven when the facts are undisputed, summary disposition is unwarranted if different inferences may be drawn from those facts." *Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 508, 794 P.2d 138, 141 (1990).

## II.

¶9        In cases such as this, the various issues bearing on jurisdiction include whether an employer-employee relationship exists. *Arizona Workers' Compensation Handbook* § 12.2.5, at 12-15 (Ray Jay Davis et al. eds., 1992) (hereafter "*Handbook*"). "The courts have struggled with the questions of what tribunal makes these decisions and how they are to be

made." *Id.* It is relatively clear, however, that the Industrial Commission and the courts have concurrent jurisdiction to determine employment status. *Id.*; *see also Uzoh v. Indus. Comm'n*, 158 Ariz. 313, 314, 762 P.2d 600, 601 (App. 1988).

¶10 In addressing the issue of whether appellees were acting as school "employees" at the time of the accident, both the motion papers below and the parties' briefs on appeal focused primarily on Restatement (Second) of Agency § 220 (1958) and cases such as *Santiago*, *Bond v. Cartwright Little League*, 112 Ariz. 9, 536 P.2d 697 (1975), and *Love v. Liberty Mutual Insurance Co.*, 158 Ariz. 36, 760 P.2d 1085 (App. 1988). On appeal, the contour of the relevant legal issues changed somewhat. This court, sua sponte, scheduled the case for oral argument, distributed a draft decision several weeks before that date,[3] and permitted the parties to file supplemental briefs if they so chose. Neither side did so. At oral argument, the parties adjusted their stance by anchoring their arguments in the workers' compensation statutes discussed in the draft decision, and appellees essentially abandoned their earlier reliance on Restatement § 220 or other common law principles to support the summary judgment. In view of that shift in position, we summarily address and dispose of the common law issues discussed in the briefs.

¶11 Restatement § 220 lists several factors, including the master's right to control performance of services, bearing on whether one person is the servant of another. *See*

---

[3]Before oral argument, this court customarily disseminates to counsel a draft decision that conspicuously states it is prepared by only one judge and may be changed entirely after argument.

*Santiago*, 164 Ariz. at 508, 794 P.2d at 141 (noting that Arizona has "adopted" § 220); *see also Ringling Bros.*, 140 Ariz. at 42-43, 680 P.2d at 178-79 (applying § 220 in workers' compensation context). Appellees emphasize the right-to-control element and assert that is "[w]hat matters" here. As Mitchell concedes, appellees' teacher clearly had the right to control their actions in performing the errand for her.

¶12        The right-to-control element, however, is but one relevant factor in determining whether an employment relationship existed and is not singularly dispositive. *See Santiago*, 164 Ariz. at 509, 794 P.2d at 142; *see also* Restatement § 220 cmt. c. Rather, in determining whether an employment relationship exists, courts consider the totality of the circumstances. *See Ringling Bros.*, 140 Ariz. at 45, 680 P.2d at 181 ("totality of the facts and circumstances" considered in determining whether decedent was employee for workers' compensation purposes, thereby precluding survivors' tort action); *see also Santiago*, 164 Ariz. at 508, 794 P.2d at 141 (in evaluating whether alleged employer could be vicariously liable under respondeat superior doctrine, "the 'objective nature of the relationship[] [is] determined upon an analysis of the totality of the facts and circumstances of each case'"), *quoting Anton v. Indus. Comm'n*, 141 Ariz. 566, 568, 688 P.2d 192, 194 (App. 1984) (second alteration in *Santiago*); *Lundy v. Prescott Valley, Inc.*, 110 Ariz. 362, 363, 519 P.2d 61, 62 (1974) (whether one person is employee of another "depend[s] on the circumstances surrounding the relationship of the parties"). Moreover, summary judgment based on Restatement § 220 is

8

appropriate only "[i]f the inference . . . is clear that [a] master-servant relationship exist[ed]." *Santiago*, 164 Ariz. at 508, 794 P.2d at 141.

**¶13**        Most of the other factors under Restatement § 220 are inapplicable on their face, unsupported by any facts in the record, or obviously weigh against a finding of any master-servant relationship between appellees and their teacher.  To the extent the limited record here sheds any light on the totality of the circumstances, it does not reflect the many indicia of an employment relationship found in cases like *Swichtenberg*, *Ringling Bros.*, or *Anton*.  *See Handbook* § 2.2.2.3, at 2-11 (in determining employment status, "regardless of how indicia are considered or weighed, the overriding caveat is that any decision must be based on the totality of the circumstances").[4]

**¶14**        Relying on *Bond* and *Love*, appellees also contend that they were "gratuitous employees" at the time of the accident and that their teacher had had the authority to "employ" them as such without the express consent of the school or the school district.  We are not persuaded.  Both *Bond* and *Love* are factually distinguishable.  And, more importantly, neither case involved any student-teacher relationship, presented or addressed any workers'

---

[4]Appellees' focus on the "right to control" language in Restatement (Second) of Agency § 220(1) (1958) also overlooks pertinent Arizona statutes governing schools and the relationship between students and teachers.  Under A.R.S. § 15-802(A), "[e]very child between the ages of six and sixteen years shall attend a school."  In addition, students are statutorily required to "comply with the rules, pursue the required course of study and submit to the authority of the teachers." A.R.S. § 15-841(A).  Thus, the right of appellees' teacher to direct and control them in all school-related matters emanated from statute rather than from any agreement or other arrangement whereby appellees were "employed to perform services in the affairs" of their teacher or the school.  Restatement § 220(1).

9

compensation issues, or engaged in any analysis under Restatement § 220. Therefore, we do not find either case particularly helpful, let alone controlling.[5] In sum, based on the limited record before us, we conclude that neither Restatement § 220 nor other common law principles support a ruling as a matter of law that appellees were school "employees" at the time of the accident.

## III.

¶15      Mitchell has consistently argued below and on appeal that appellees were not school district employees at the time of the accident and, therefore, her action against them is not barred by § 23-1022(A). As far as we can tell, however, Mitchell did not specifically ground her position in the workers' compensation statutes until oral argument in this court. Conversely, appellees contended for the first time at oral argument that Arizona's workers' compensation statutes, rather than common law principles, are controlling and that, under those statutes, they were acting as Mitchell's coemployees at the time of the accident. On that basis, they now argue, the workers' compensation system was her exclusive remedy, and this action is barred.

---

[5]The primary issue in *Love* was whether the putative servant, a waitress, had been acting within the scope of her employment at the time of the accident. Appellees likewise argue here that they were acting within the course and scope of their "employment" with the school at the time of the accident. That is probably so, and Mitchell does not contend otherwise, assuming appellees qualified as "employees" for workers' compensation purposes. But, because we conclude they did not so qualify, we do not address this secondary issue. *See Arizona Workers' Compensation Handbook*, § 2.2.1.1, at 2-5 (Ray Jay Davis et al. eds., 1992) (only if initial question of whether person qualifies as employee "is answered affirmatively does any further analysis come into play").

**¶16**         Generally, issues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived.  *Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977); *Johnson v. Hispanic Broadcasters of Tucson, Inc.*, 196 Ariz. 597, ¶ 8, 2 P.3d 687, 690 (App. 2000).  And, as a general rule, "[o]n appeal from summary judgment, a party may not advance new theories or raise new issues to attempt to secure a reversal." *Childress Buick Co. v. O'Connell*, 198  Ariz. 454, n.2, 11 P.3d 413, 418 n.2 (App. 2000); *see also Lansford v. Harris*, 174 Ariz. 413, 419, 850 P.2d 126, 132 (App. 1992).  These rules, however, are procedural, not jurisdictional, and in our discretion we may suspend them.  *See City of Tempe v. Fleming*, 168 Ariz. 454, 456, 815 P.2d 1, 3 (App. 1991).  We do so here for several reasons.

**¶17**         First, in their motion for summary judgment below, appellees specifically cited § 23-901 to support their claim of "co-employee" status at the time of the accident.  Second, the trial court expressly based its summary judgment ruling on the Workers' Compensation Act, specifically § 23-1022(A).  Third, we are faced with a purely legal issue of general statewide interest.  *See City of Tempe*, 168 Ariz. at 456, 815 P.2d at 3; *see also State v. Arizona Prop. & Cas. Ins. Guar. Fund*, 192 Ariz. 390, n.4, 966 P.2d 557, 559 n.4 (App. 1998); *cf. Am. Family Mut. Ins. Co. v. Continental Cas. Co.*, 200 Ariz. 119, n.1, 23 P.3d 664, 667 n.1 (App. 2001) ("[W]hen we consider the interpretation and application of statutes, we cannot be limited to arguments made in the trial court if that would cause us to reach an incorrect result."); *Pavilion Hotel, Inc. v. Valley Nat'l Bank*, 180 Ariz. 498, 503, 885 P.2d

11

186, 191 (App. 1994) (if application of legal principle not raised below would dispose of action on appeal and correctly explain law, appellate court may consider issue).

**¶18** Finally, we now have received "analytical input from the parties," and neither side claims any surprise or unfairness. *Childress Buick Co.*, 198 Ariz. 454, ¶ 29, 11 P.3d at 418. Accordingly, we turn our focus to whether appellees and Mitchell qualified as coemployees of the school under the pertinent workers' compensation statutes, although neither the motion papers below nor the appellate briefs centered on that issue. *See Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App. 1986) (we will affirm summary judgment "if it is correct for any reason," if record and law support the result).

**¶19** We acknowledge at the outset the difficult "task of 'trying to put an extremely ill-defined and informal working arrangement into legal pigeonholes.'" *Anton*, 141 Ariz. at 572, 688 P.2d at 198, *quoting Marlow v. Dexter Wood Prods.*, 615 P.2d 402, 403 (Or. Ct. App. 1980). Nonetheless, we first note that "[t]he Arizona Constitution specifies certain classes of persons who are subject to the Workmen's Compensation Act." *Keeney v. Indus. Comm'n*, 24 Ariz. App. 3, 4, 535 P.2d 31, 32 (1975); *see also* Ariz. Const. art. XVIII, § 8. Although the constitution does not include students in the class of persons to whom the workers' compensation system applies, it requires the legislature to enact statutes governing that system. *Id.*; *see also Atkinson, Kier Bros., Spicer Co. v. Indus. Comm'n*, 35 Ariz. 48, 52-53, 274 P. 634, 635 (1929) (legislature may pass workers' compensation laws in exercise of police power without express constitutional authority). And, in general, "[i]t is the sole

12

prerogative of the Arizona State Legislature to specify those additional persons who are to be considered employees within the meaning of the Workmen's Compensation Act." *Keeney*, 24 Ariz. App. at 4, 535 P.2d at 32; *see also Ferrell v. Indus. Comm'n*, 79 Ariz. 278, 282, 288 P.2d 492, 496 (1955).

¶20        Therefore, in our view, the determinative issue is whether appellees and Mitchell qualified as coemployees of the school under the pertinent workers' compensation statutes. Section 23-901, which defines "employee" and "co-employee" for workers' compensation purposes, is the starting point for our analysis.[6] If appellees do not fall within those statutory definitions, then presumably § 23-1022(A) does not apply to bar Mitchell's tort action against them.

¶21        Under § 23-901(3), "'[c]o-employee' means every person employed by an injured employee's employer." Mitchell clearly was a school district employee. Therefore, determining whether appellees qualified as her coemployees depends on whether they also qualified as school "employees" for workers' compensation purposes. In pertinent part, § 23-901(6) provides that "[e]mployee" means:

> (a)   Every person in the service of . . . a . . . school district, . . . whether by election, appointment or contract of hire.

> (b)   Every person in the service of any employer subject to this chapter, including aliens and minors legally or illegally

---

[6]As noted earlier, at oral argument in this court, appellees conceded that Arizona's workers' compensation statutes govern the analysis of whether they qualified as "employees" at the time of the accident.

permitted to work for hire, but not including a person whose employment is both:

(i) Casual.

(ii) Not in the usual course of the trade, business or occupation of the employer.

¶22 "Because of the remedial purposes of the Act, the definition of employee should be liberally construed" when a claimant seeks workers' compensation coverage or benefits. *Central Mgmt. Co. v. Indus. Comm'n*, 162 Ariz. 187, 190, 781 P.2d 1374, 1377 (App. 1989); *see also Handbook* § 2.2.1.1, at 2-5, 2-7. But, "when the question is whether a worker's common-law rights should be denied him, it is equally appropriate to interpret strictly the workers' compensation statutes." *Bonner*, 159 Ariz. at 256, 766 P.2d at 608; *see also Young v. Envtl. Air Prods.*, 136 Ariz. 158, 163, 665 P.2d 40, 45 (1983). In addition, "because the superior courts are courts of general jurisdiction, we construe statutes in favor of retaining jurisdiction and will not find divestiture unless stated clearly, explicitly, and unambiguously." *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 273, 872 P.2d 668, 677 (1994).

¶23 In their brief, appellees neither point to any facts nor present any argument to establish that they qualified as "employees" under § 23-901(6). As for subsection (a) of that statute, the record does not suggest that they performed their errand pursuant to any election or contract of hire. *See Watson v. Indus. Comm'n*, 100 Ariz. 327, 332, 414 P.2d 144, 148 (1966) ("contract of hire" implies voluntary relation between the parties); *Posey v. Indus.*

14

*Comm'n*, 87 Ariz. 245, 251, 350 P.2d 659, 663 (1960) (petitioner not entitled to workers' compensation because "he was not under a contract of hire, either express or implied," at time of injury); *Ferrell*, 79 Ariz. at 281, 288 P.2d at 494 ("[A] contract of hire . . . connotes payment of some kind."); *Trembath v. Riggs*, 673 P.2d 1348, 1352 (N.M. Ct. App. 1983), *overruled in part on other grounds by Dupper v. Liberty Mut. Ins. Co.*, 734 P.2d 743 (N.M. 1987) ("no 'contract of hire'" existed between school and student who was performing errand during school hours at teacher's request).

¶24        For the first time at oral argument, however, appellees contended they qualified as "employees" under § 23-901(6)(a) because, at the time of the accident, they were performing the errand "in the service" of the school pursuant to their teacher's "appointment" of them for that task. We find several flaws in this argument. First, although appellees' teacher apparently chose or designated them to perform the errand, we cannot say that action constitutes an "appointment" for purposes of § 23-901(6)(a). Second, the limited record before us does not clearly establish that appellees were necessarily acting "in the service" of the "school district" in performing it. § 23-901(6)(a); *see also* A.R.S. § 15-101(20) (a "[s]chool district" is "organized for the purpose of the administration, support and maintenance of the public schools"). Third, appellees have cited no facts or law to suggest that their teacher was authorized to transform them into school employees, albeit temporary ones, by merely "appointing" them to perform a routine errand. *Cf. Porter v. Louisiana Grocers Co-Operative, Inc.*, 233 So. 2d 709, 711 (La. Ct. App. 1970) (agent must be duly

15

authorized to employ workers on master's behalf, and one worker who secures another to assist worker does not thereby create relationship of employer and employee between helper and employer).

¶25        In addition, analogous out-of-state authority refutes appellees' new reliance on § 23-901(6)(a). Under a statute very similar to § 23-901(6)(a), the Colorado Supreme Court concluded that a high school's volunteer baseball pitching coach was not a school district employee for workers' compensation purposes pursuant to an alleged "appointment." *Mesa County Valley Sch. Dist. v. Goletz*, 821 P.2d 785 (Colo. 1991). As that court noted, "the limitation of the classification of employee by appointment only to the public sector indicates a legislative intent that the term 'appointment' is 'generally understood to mean the selection of a public officer by one person who is empowered by law to make the appointment.'" *Id*. at 787, *quoting Main v. Claremont Unified Sch. Dist.*, 326 P.2d 573, 577 (Cal. Ct. App. 1958). To constitute an "appointment" under the workers' compensation statute, the Colorado court ruled, "the person making the designation must be vested with the authority to do so[, and] the appointment must be for the purpose of discharging the duty of some office or trust." *Id*. Neither element was met in that case, nor is either present here.

¶26        Like subsection (a) of § 23-901(6), subsection (b) categorizes as an "employee" every person "in the service" of an employer, subject to a two-pronged, conjunctive exception. Appellees also contended for the first time at oral argument that they qualified as "employees" under that subsection. As noted above, however, neither the record nor the

16

law establishes that appellees were acting "in the service" of the school district at the time of the incident. But, even assuming they were, under the first, exclusionary prong of § 23-901(6)(b), a trier of fact could infer that appellees' alleged "employment" was "casual." § 23-901(6)(b)(i); *see Estate of Wesolowski v. Indus. Comm'n*, 192 Ariz. 326, ¶ 16, 965 P.2d 60, 64 (App. 1998) ("Casual employment is both irregular and brief. 'Ordinarily, very short employments, of a few hours or days, are considered casual . . . .'"), *quoting* Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 51.12, at 9-170 through 9-172 (1997). Appellees conceded that point at oral argument.

**¶27** A trier of fact also could infer under the second, conjunctive prong of § 23-901(6)(b)(ii), that the "usual course of the trade, business or occupation of the employer"—here, the school district—was to educate students. Contrary to appellees' oral argument, absent any evidence on that point, it certainly is not self-evident that assigning students menial jobs collateral to the core educational process is part of the "usual course" of a teacher's or a school's "business." *See Young*, 136 Ariz. at 164, 655 P.2d at 46 (test for whether activity is part of employer's usual trade, business, or occupation "focuses on the broad question of whether the activity is a necessary and expected part of the employer's business, even though rarely performed"); Restatement § 220(2)(h) (providing that "whether or not the work is part of the regular business of the employer" is a factor in determining whether master-servant relationship exists). Moreover, as noted above, qualification as an "employee" under § 23-901(6)(b) requires that the person be "in the service of any

17

employer," and the only prospective employer here is the school district, not merely this particular school or one of its teachers. *Compare* A.R.S. § 15-101(19) (defining "[s]chool") *with* § 15-101(20) (defining "[s]chool district").

¶28 In sum, based on the pertinent workers' compensation statutes alone and this record, we cannot say as a matter of law that appellees were Mitchell's "co-employees" as that term is defined and used in those statutes. *See* §§ 23-901(3), (6); 23-1022(A); *cf. Connors v. Parsons*, 169 Ariz. 247, 252, 818 P.2d 232, 237 (App. 1991) (when evidence did not clearly resolve whether coemployee was acting within scope of employment at time of accident so as to preclude other employee's tort action, summary judgment inappropriate and "presentation of further factual data to the trial court" required). Accordingly, the trial court erred in granting summary judgment in favor of appellees.

## IV.

¶29 Mitchell also argues that the trial court's determination that she and appellees had been "co-employees" is contrary to public policy, essentially means that "virtually anything a young student does at the request of a teacher forms an employment relationship," and could lead to the "possible destruction of the Workers['] Compensation system." Because we conclude that summary judgment in favor of appellees was inappropriate based on the record and applicable law, we need not and do not specifically address those contentions. *See Consumers Int'l, Inc. v. Sysco Corp.*, 191 Ariz. 32, 37, 951 P.2d 897, 902 (App. 1997).

18

**¶30** We recognize, however, that in some respects, our conclusion seems counterintuitive and possibly raises some public policy concerns. For example, if appellees' teacher had performed the errand herself and had accidentally injured Mitchell in the process, Mitchell clearly could not have maintained a common law negligence action against the other teacher, but rather, her remedies would have been limited to the workers' compensation system. Therefore, it was arguably fortuitous that the teacher instead sent appellees to perform the errand and that they essentially were standing in her shoes at the time of the accident.

**¶31** In addition, the possibility of a teacher's being accidentally injured at school by a student while acting in the course and scope of his or her employment might be considered an occupational hazard. Teachers, after all, work with and among students on a daily basis. Given their employment context, teachers have a reasonable expectation that injuries sustained in their workplace at school, whether caused by students or otherwise, will be covered by the workers' compensation system. Conversely, permitting teachers to avoid that system and sue students in a case such as this arguably exceeds that reasonable expectation.

**¶32** Similarly, most parents might be surprised, if not alarmed, to learn that their school-age children could be sued and potentially held liable for negligence in this type of case. And that is particularly so when, as here, the accident occurred while the students were merely performing a routine errand at their teacher's request.

¶33     On the other hand, school districts and their workers' compensation insurers might be equally dismayed to learn that students who themselves are injured at school while performing routine errands at a teacher's request could be deemed "employees" and, as such, seek and obtain workers' compensation benefits. And, an injured student's entitlement to such benefits theoretically would arise whether the student was "employed" legally or illegally. *See* A.R.S. §§ 23-901(6)(b) ("employee" includes "minors legally or illegally permitted to work for hire"); 23-905 (injured minors working either legally or illegally may collect workers' compensation benefits); *see also Herman v. Indus. Comm'n*, 100 Ariz. 312, 315, 414 P.2d 134, 136 (1966) ("A legally-employed minor may appear before the Commission and prosecute his application for compensation . . . ."); *S. H. Kress & Co. v. Superior Court*, 66 Ariz. 67, 182 P.2d 931 (1947) (thirteen-year-old minor illegally hired and injured at work was "employee" within terms of workers' compensation statutes and, therefore, his sole remedy was under Act, precluding common law action against employer); *cf.* Ariz. Const. art. XVIII, § 2 (prohibiting employment of children under age of fourteen during school hours).

¶34     Notwithstanding the competing public policy concerns here, we must attempt to analyze and resolve this case under the workers' compensation statutes that both sides now agree are controlling. Unfortunately, those statutes do not specifically address the student-teacher relationship at issue here. Nor did the legislature, in all probability, contemplate that issue. Although public policy arguments can be made for or against the result we reach, our

20

conclusion hinges solely on the applicable workers' compensation statutes and other legal principles discussed above. In the face of Arizona's extensive and elaborate statutory scheme, it is for the legislature, not this court, to weigh the policy considerations and determine whether any statutory change is appropriate or necessary.[7] *See Florez v. Sargeant*, 185 Ariz. 521, 529, 917 P.2d 250, 258 (1996) (noting that "delicate policy decisions" often involve "the weighing, balancing, and policy making that . . . are properly legislative, not judicial, tasks"); *Prudential v. Estate of Rojo-Pacheco*, 192 Ariz. 139, 150, 962 P.2d 213, 224 (App. 1997) ("[I]t is for the legislature, not this court, to evaluate and balance competing policy considerations that bear on these issues and to make any necessary changes in this area.").

## DISPOSITION

¶35 The trial court's grant of summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

---

[7]Although the dissent cites no authority to support its conclusion, we do not necessarily disagree with the policy arguments it advances. But, in our view, they should be directed to the legislature and do not permit us to avoid analysis and resolution of the case, silly as it might seem to some, based on the applicable statutes. *See Galloway v. Vanderpool*, 205 Ariz. 252, ¶ 19, 69 P.3d 23, 28 (2003) ("The legislature, of course, can amend the workers' compensation statutes . . . , and that body provides the appropriate forum to argue that public policy considerations favor abandoning [an established common law] rule."); *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, ¶ 27, 33 P.3d 518, 525 (App. 2001) ("[W]hen, as here, the legislature has clearly spoken on a matter within its domain, its word constitutes public policy on that subject and controls, assuming no constitutional impediments exist.").

_____
                                    JOHN PELANDER, Presiding Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Judge


E S P I N O S A, Chief Judge, dissenting.

**¶36**        Respectfully, I cannot agree with the majority's, in my view, overly technical analysis to reach a conclusion it candidly acknowledges is both counterintuitive and bad public policy. And, I would venture, contrary to common sense. To say that parents of school children may be surprised and alarmed to discover that their children could be subject to personal liability as a result of innocently carrying out a teacher's routine directive is no small understatement. On the other hand, I believe it requires no legal calisthenics to determine that the student defendants in this case merely stepped into the shoes of their teacher, for purposes of this action, when they obediently carried out her command and did so, even under the limited record in this case, clearly and solely in furtherance of a school purpose. Whether this conclusion would necessarily require that students be covered under the Workers' Compensation Act for other purposes is a distinctly different inquiry that would depend on different facts not before us.

22

¶37 The unfortunate impact of this ruling will be to send a bleak message to parents and guardians that their children and, for practical purposes, their insurance policies, are at risk should their children merely cooperate with teachers' commonplace requests to lend various forms of assistance during school. How this new class of defendants will determine what types of cooperation may or may not expose them to liability, and the extent of the resulting chill and additional burden on student-teacher relationships, is highly troubling. Because the unremarkable accident and alleged injury in this case are, as the majority recognizes, entirely foreseeable occupational hazards for teachers who daily work in a school environment, it does no damage to our workers' compensation scheme to avail these unsuspecting children and their families of its protection and to restrict the plaintiff to her chosen remedy under law. It would also make sense.

_____

PHILIP G. ESPINOSA, Chief Judge