653 P.2d 712

**UNITED SERVICES AUTOMOBILE AS-SOCIATION, a Texas corporation, Plaintiff-Appellant,**

v.

**EMPIRE FIRE AND MARINE INSUR-ANCE COMPANY, a Nebraska corporation, Defendant-Appellee.**

**No. 1 CA–CIV 5531.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 26, 1982.

Gust, Rosenfeld, Divelbess & Henderson by Frederick G. Gamble, Teri Thomson Corwin, Phoenix, for plaintiff-appellant.

Renaud, Cook & Videan, P.A. by J. Gordon Cook, Phoenix, for defendant-appellee.

OPINION

KLEINSCHMIDT, Judge.

This case raises an issue of whether a loss should be apportioned among two insurers. The resolution turns on the construction and purposes of the policies.

The case grows out of an automobile collision between a car driven by Robert Richards and another driven by Augustus Turner. The car driven by Richards was owned by one Roger Anderson and was a scheduled vehicle under two liability policies, one issued by Security Mutual Casualty Co. which provided primary coverage on the vehicle up to $50,000 and the other issued by Empire Fire and Marine Insurance Company which provided excess coverage up to $250,000 after the underlying Security Mutual policy was exhausted.

At the time of the accident Robert Richards was also insured under a policy issued to his father by United States Automobile Association (USAA). This policy, which has a $100,000 limit, provided coverage to Richards when he was driving a non-owned automobile.

Augustus Turner brought an action against Richards for personal injury and wrongful death and the suit was settled for $135,000. Security Mutual, conceding that it was the primary insurer, paid $50,000, the limits of its policy. There was an understanding between all parties that a declaratory judgment action would be filed to determine the relative liabilities of USAA and Empire for the balance of the settlement. The action was filed and the trial court granted Empire's motion for summary judgment thereby determining that there was a hierarchy of coverage in which Empire was excess to USAA. This appeal ensued.

USAA contends that each policy in question provides that it is excess to any other insurance, that the policies therefore conflict and that as a result the loss should be apportioned among the two insurers according to the respective policy limits. The clause in its policy which USAA relies on reads as follows:

... the insurance with respect to a ... non-owned automobile shall be excess insurance over any other valid and collectible insurance.

Empire, on the other hand, argues that the policies are not inconsistent because by its terms its policy does not come into effect until *deductions* for all other insurance have been made. According to Empire this renders its policy a "contingent excess" policy secondary to USAA's. The clause Empire relies on reads as follows:

"Loss" means the sums paid in settlement of claim or satisfaction of judgment as damages for which the insured is liable, after making deductions for all other recoveries, salvages and other insurances (other than the amounts payable under the Primary Insurance) whether recoverable or not, and shall exclude all expense and all costs.

We observe at the outset that there are a multitude of cases from many jurisdictions which wrestle with the problems and conflicts created by the existence of concurrent insurance policies and so-called "other insurance" or "excess insurance" clauses. The cases are difficult to interpret and in some instances impossible to reconcile.

We conclude that the insurers need not apportion the loss and that USAA must first contribute up to its policy limits to satisfy the settlement. Since this, together with the contribution of the primary insurer, will discharge the obligation, Empire's policy does not come into play.

■ We start with a basic tenet of Arizona law that in construing and interpreting insurance contracts, the intention of the parties should control. *Dairyland Mutual Insurance Co. v. Andersen*, 102 Ariz. 515, 433 P.2d 963 (1967). Where the conflicting other-insurance clauses are truly inconsistent they may be disregarded and the loss apportioned. *Harbor Ins. Co. v. United Services Auto Ass'n*, 114 Ariz. 58, 559 P.2d 178 (App.1976).

Empire's contention that the policies are not inconsistent because its policy language, which provides for payment only after making *deductions* for "other insurances" makes it a "contingent excess" policy as opposed to a mere "excess" policy, is a very refined argument indeed. It really does not answer USAA's contention that its clause, which makes coverage excess "over any other insurance," is broad enough to render

USAA's coverage truly secondary. Since the problem simply will not yield to "word-logic" we look to the language of each policy in light of the circumstances of each contracting party to determine the intent within the framework of an overall insuring scheme. *See Allstate Insurance Co. v. Employers Liability Assurance Corp.,* 445 F.2d 1278, 1283–84 (5th Cir.1971). While there is no economic, statistical or actuarial evidence in the record we think that common experience and common sense will support some basic conclusions about the total insuring intent.

The Empire policy provides so-called "umbrella" coverage, a form of insurance which fulfills the need to guard against a particularly large loss. Under no set of circumstances can Empire's coverage ever be primary insurance. The USAA policy was written as primary coverage for the Richards' automobiles. While it is true that it is excess insurance in this instance because Richards was driving someone else's automobile it necessarily contemplated a different and probably a greater risk than that covered by the Empire policy. What's more, since the USAA policy was issued to specific persons for primary limited amounts, USAA was in a better position to evaluate its risk than would be a purely excess carrier against whom no claims might be made even though its insureds had repeatedly incurred liability in amounts within their primary coverage.

Although we are aware that the logic of USAA's argument has received respectful attention, *Peerless Casualty Co. v. Continental Casualty Co.,* 144 Cal.App.2d 617, 301 P.2d 602, 608 (1956) we know of no case which squarely supports its position. At least one case, *Allstate Insurance Co. v. Employers Liability Assurance Corp.,* supra, which construes similar clauses in similar policies under circumstances similar to those presented here, directly supports our conclusions.

The appellant's reliance on *Rocky Mountain Fire & Casualty Co. v. Allstate Insurance Co.,* 13 Ariz.App. 31, 474 P.2d 38 (1970), supplemented, 13 Ariz.App. 405, 477 P.2d 279 (1970), is misplaced. It is true that this court, for the sake of simplicity and certainty, apportioned a loss between an insurer which had issued a garage owner's policy and an insurer which had issued a policy to the driver of an automobile loaned by the garage. The supreme court vacated that opinion, 107 Ariz. 227, 485 P.2d 552 (1971). The supreme court held that the other insurance clause of the garage owner's policy was void as against public policy expressed by the Arizona Financial Responsibility Act and determined that the garage owner's policy was primary. While the supreme court did not comment on this court's effort to simplify the law the case can fairly be said to reaffirm the rule that the courts must construe policies in light of public policy and what the policies were intended to accomplish. *See also Transport Indemnity Co. v. Carolina Casualty Ins. Co.,* 652 P.2d 134 (Sup.Ct.Ariz. 82) for an opinion that goes to great lengths to divine intent from policy language and from public policy.

The appellants insist that the proration rule would result in certainty and simplicity. The problem with this argument is that it would substitute a mechanical rule for an effort to find the total insuring intent. There is certainty and simplicity in a rule which holds insurers who issue residual protection *only* are last to pay so long as that is their expressed intent.

OGG, P.J., and CORCORAN, J., concur.