23 P.3d 664

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Plaintiff–Appellee,**

v.

**CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant–Appellant.**

No. 1 CA–CV 00–0020.

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 27, 2001.

Christian, Mariano & Coomer, P.L.C., by Lynn Allen Wiysel, Phoenix, Attorneys for Plaintiff–Appellee.

Lewin & Schneider, P.C., by Jon D. Schneider, Ross W. Johnson, Cody M. Hall, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

VOSS, Presiding Judge.

¶ 1 This appeal involves a dispute between two insurance companies, each of which provided both primary coverage and umbrella coverage that was potentially applicable to the same motor vehicle accident in which a passenger was injured. Pursuant to Ariz.

Rev.Stat. ("A.R.S.") section 20–1123.01(B)(1990), the primary policy covering the vehicle was first in line to pay for the injuries to the passenger. The issue on appeal is whether that same statutory provision mandates that the umbrella policy covering the vehicle must also be exhausted before reaching the separate primary policy covering the non-owner driver of the vehicle.

¶ 2 The trial court ruled on summary judgment that it did not, ordering that the non-owner driver's primary liability coverage must be exhausted ahead of the owner's umbrella policy. We affirm the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

¶ 3 The relevant facts in this case are undisputed. Stephen Salter owned a pick-up truck, which he had loaned to his father, Stanley Salter. While Stanley was driving the truck, he had an accident in which his wife, Marlene, a passenger in the truck, was seriously injured.

¶ 4 Stephen maintained insurance on his truck covering the accident. Stephen's insurance was provided by American Family Mutual Insurance Company ("American Family") under two separate policies: (1) a standard automobile liability policy with $100,000 limits per person, and (2) an umbrella or excess policy with $1,000,000 limits.

¶ 5 Additionally, Stanley had his own insurance policy with Continental Casualty Company ("Continental"), covering him for automobile accidents in which he was involved. The Continental policy provided two coverages: (1) standard automobile liability coverage with $250,000 limits per person and (2) umbrella or excess liability coverage with limits of $1,500,000.

¶ 6 Following the accident, Marlene presented claims for her injuries to both American Family and Continental. American Family paid the $100,000 limits of its standard automobile liability policy, acknowledging that that policy was first in line with respect to the accident. Marlene in return executed a release that protected Stephen and Stanley from all personal liability, while allowing her to pursue claims under the other available insurance coverages.

¶ 7 Marlene's injuries exceeded the limits of the American Family primary policy. Because American Family and Continental disputed which policy was next in line to pay for any additional injuries, Marlene filed suit against Stanley. Stanley tendered the defense of the underlying action to Continental, which in turn tendered the defense to American Family. American Family provided the defense for Stanley in the personal injury action, eventually settling the lawsuit with Marlene for an additional $250,000.

¶ 8 American Family then brought the instant declaratory judgment action against Continental to obtain a ruling that Continental's primary automobile liability policy was next in line to pay for Marlene's additional damages to its policy limits of $250,000, and to recover the attorneys' fees and costs it had incurred in defending Stanley. Following the filing of cross-motions for summary judgment, the trial court ruled in favor of American Family, concluding that, because Continental had a standard automobile policy affording primary coverage for Marlene's claims, Continental must pay under that policy before American Family's obligation arose under the umbrella policy, which the court found to be purely excess coverage over any primary coverage. The court awarded American Family the attorneys' fees and costs it had incurred in defending Stanley in the personal injury lawsuit, as well as the fees and costs it had incurred in the declaratory judgment action. Continental timely appealed.

## STANDARD OF REVIEW

¶ 9 Where, as here, there are no disputed facts, the role of this court is to determine whether the trial court correctly applied the substantive law to the undisputed facts in making its grant of summary judgment. *Miller v. Westcor Ltd. P'ship*, 171 Ariz. 387, 390, 831 P.2d 386, 389 (App.1991). Continental argues that the trial court erred in failing to properly interpret and apply the controlling statute. We review issues of statutory interpretation and application *de novo*. *Citibank (Arizona) v. Van Velzer*, 194 Ariz. 358,

359, ¶ 5, 982 P.2d 833, 834 (App.1998). We will uphold the trial court's decision if it is correct for any reason. *Logerquist v. Danforth*, 188 Ariz. 16, 18, 932 P.2d 281, 283 (App.1996).

## DISCUSSION

¶ 10 Continental acknowledges that its coverage in the amount of $250,000 is what is known as a "primary" policy, whereas American Family's remaining policy is an "umbrella" policy, also referred to as an "excess" policy. These two types of insurance represent different layers of coverage:

> Primary insurance is coverage where "under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability." ... A primary policy provides "first dollar" liability coverage up to the limits of the policy, and in some instances subject to a deductible. An "excess" or secondary insurance policy provides coverage where "under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." ... Excess insurance is the next "layer" of coverage above the primary policy.

*Archer–Daniels–Midland Co. v. Phoenix Assur. Co. of N.Y.*, 975 F.Supp. 1129, 1134 (S.D.Ill.1997) (citations omitted).

¶ 11 In *St. Paul Fire & Marine Insurance Co. v. Gilmore*, 168 Ariz. 159, 812 P.2d 977 (1991), the Arizona Supreme Court discussed the two respects in which insurance may be deemed excess: (1) "true excess" coverage, which provides coverage for a modest premium against catastrophic losses that exceed the limits of the underlying coverage; and (2) when *other* insureds have purchased insurance that fortuitously may be applicable to a given loss. *Id.* at 162–63, 812 P.2d at 980–81. An insurer, through the use of what is referred to as an "excess clause," may provide that its policy provides liability coverage only for amounts due after all other available insurance has been exhausted, even though its policy is a primary one as opposed to umbrella or excess coverage. *State Farm Mut. Auto. Ins. Co. v. Bogart*, 149 Ariz. 145, 147, 717 P.2d 449, 451 (1986).

¶ 12 "[U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." 8A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4909.85, at 453–54 (1981) (footnotes omitted). As one of the many courts embracing this majority rule has explained:

> [R]esolution of the question of priority in payment must come, as the majority rule indicates, from a common sense look at the basic function each policy was intended to serve. Competing "other insurance clauses" in ... policies, which normally would invoke contract construction rules, must yield to a finding of the insurance policies' main functions.

*LeMars Mutual Ins. Co. v. Farm & City Ins. Co.*, 494 N.W.2d 216, 219 (Iowa 1992).

¶ 13 Similarly, this court in *United Services Automobile Ass'n v. Empire Fire & Marine Insurance Co.*, 134 Ariz. 64, 653 P.2d 712 (App.1982), in a situation very similar to this one, held that an umbrella policy should be the last to pay after all primary policies. In that case, the driver, Richards, was driving a non-owned vehicle. The vehicle was insured under a primary policy with Security Mutual and an umbrella policy with Empire. Richards had his own primary coverage with USAA. Security Mutual paid its policy limits, but a dispute arose as to how remaining damages should be paid. Although the USAA policy had a clause making it excess insurance because Richards was driving someone else's automobile, this court observed that the USAA policy "necessarily contemplated a different and probably a greater risk than that covered by the Empire policy." *Id.* at 66, 653 P.2d at 714. In refusing USAA's request to prorate the remaining loss between the two policies, this court found that the USAA policy should pay ahead of Empire's umbrella policy. We reasoned that "[t]here is certainty and simplicity in a rule which holds insurers who issue residual protection *only* are last to pay so long as that is their expressed intent." *Id.*

¶ 14 We reached a similar result in *Arizona Joint Underwriting Plan v. Glacier General Assurance Co.*, 129 Ariz. 351, 631 P.2d 133 (App.1981), requiring all primary policies covering the occurrence to pay before an excess carrier's policy, noting that it would be an undeserved windfall for a primary insurer to be excused from paying "merely because a fellow primary insurer had additional excess coverage." *Id.* at 354, 631 P.2d at 136.

¶ 15 This authority notwithstanding, Continental argues that A.R.S. section 20–1123.01(B) mandates that any insurance policy describing or rating an owned automobile, regardless of whether it is a primary or an umbrella policy, shall pay ahead of insurance afforded by other policies that do not describe or rate the vehicle. That subsection provides:

> B. Except as provided in subsection A of this section, if two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

¶ 16 American Family argues to the contrary, contending that the statute merely concerns excess "clauses" in motor vehicle policies, which limit the insurer's liability by distributing the loss among insurance carriers, and not excess or umbrella "policies," which provide additional layers of coverage for additional premiums.[1]

¶ 17 We acknowledge that the statute could be read as Continental argues. However, a statute must be given a sensible construction that accomplishes the legislative intent behind it. *Collins v. State*, 166 Ariz. 409, 803 P.2d 130 (App.1990). We may examine the language used, the context, subject matter, effects and consequences, and the spirit and purpose of the law to determine the legislative intent. *State v. Cereceres*, 166 Ariz. 14, 800 P.2d 1 (App.1990).

¶ 18 When we examine section 20–1123.01(B) in this light, it appears that this provision was enacted to address the conflict between policies that cover an insured individual using a non-owned vehicle and policies that insure the vehicle and whoever is driving it, each with language limiting coverage when "other insurance" covers the accident. The legislature obviously wanted to break the tie between policies providing the same layer of protection by establishing a presumptive rule as to who pays first. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co.*, 149 Ariz. 179, 181, 717 P.2d 858, 860 (1986). There is no reason to conclude that the legislature even contemplated umbrella policies-true excess policies that provide a different layer of coverage-when it enacted section 20–1123.01(B). We conclude that this statute does not require us to reverse the trial court's decision.

## ATTORNEYS' FEES ON APPEAL

¶ 19 American Family requests an award of attorneys' fees on appeal pursuant to A.R.S. section 12–341.01. We grant the request in an amount to be determined upon American Family's compliance with the requirements of Rule 21(c), Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶ 20 For the reasons explained in this opinion, we uphold the trial court's decision that Continental was liable for providing indemnity and defense under its primary policy ahead of American Family's umbrella policy.

CONCURRING: NOEL FIDEL, Judge, CECIL B. PATTERSON, JR., Judge.

---

1. Continental argues that we should reject American Family's statutory interpretation argument because American Family failed to make it in the trial court. We decline to do so, however, because when we consider the interpretation and application of statutes, we cannot be limited to arguments made in the trial court if that would cause us to reach an incorrect result. *Evenstad v. State*, 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993).