OPINION OF THE COURT
William J. Giacomo, J.
At issue herein is whether insurance coverage afforded to plaintiffs Briarwoods Farm, Inc., Israel Herskowitz, Yosef Herskowitz, Eliezer Herskowitz, Herskowitz Family Enterprises, and the Herskowitz Family Entity (hereinafter the Herskowitz plaintiffs) as additional insureds under a policy of insurance issued by defendant Central Mutual Insurance Company to Leonard Rosado, individually (the Central policy), was excess or primary coverage.
This court holds that under the present law, absent a showing that a general contractor was actually seeking excess coverage rather than primary coverage, a subcontract’s language calling for coverage of the general contractor/owner as an “additional insured” requires the subcontractor to provide primary coverage. Accordingly, this court concludes that the insurance afforded under the Central policy to the Herskowitz plaintiffs was primary coverage.
This court also holds that under the present state of the law, a determination that the insurance policy of the subcontractor is primary coverage to the general contractor/owner, does not preclude a determination that the insurance policy of the general contractor/owner also provides primary coverage. Thus, even though the Central policy provides primary coverage to the Herskowitz plaintiffs as “additional insureds,” the Herskowitz plaintiffs’ own policy also provides for primary coverage rendering both policies equally obligated to cover the costs associated with the settlement of the underlying wrongful death action.
Factual and Procedural Background
In this declaratory judgment action,[1] the Herskowitz plaintiffs sought coverage from Central, under the Central policy issued to Leonard Rosado, for claims in an underlying personal injury/ wrongful death action.[2]
*429 By decision and order dated February 13, 2007 (the February order), Justice Lawrence Horowitz denied Central’s motion for summary judgment and granted the Herskowitz plaintiffs’ cross motion for leave to amend their complaint, then granted them summary judgment on the amended complaint, declaring that there was coverage and that in failing to provide such coverage Central breached the Central policy. In the February order the court held that the Herskowitz plaintiffs were “additional insureds” under the Central policy and as such were afforded coverage under the Central policy.
By decision and order dated October 11, 2007 (the October order), this court denied a motion brought by Central seeking to clarify the February order because it failed to annex a full set of the original submissions that culminated in the February order.
With permission of the court to bring a new motion, Central again sought clarification of the February order, arguing that the February order failed to decide whether the coverage issued by Central to the Herskowitz plaintiffs was excess insurance or primary insurance. By decision and order dated July 3, 2008 (the July order), this court held that neither party had requested that the court determine whether the coverage from Central was primary or excess, therefore in rendering the February order the court’s failure to address the type of coverage did not require clarification. This court also held in the July order, as it opined in its October order, that pursuant to BP A.C. Corp. v One Beacon Ins. Group (8 NY3d 708, 716 [2007]), in order to determine an issue of “priority of coverage among different policies” this court had to “review and consider all of the relevant policies at issue.” (Id.) Acknowledging in the July order that all insurance carriers had by that time been joined to the instant proceeding, the court granted the parties leave to seek renewal in this declaratory judgment action pursuant to CPLR 2221 (e). The instant motion ensued.
Central takes the position that its coverage of the Herskowitz plaintiffs as defendants in the underlying matter (Rosado v Briarwoods Farm, Inc., Orange County index No. 5596/2001), was excess insurance rather than primary insurance. The Herskowitz plaintiffs take this position based on this court’s ruling in *430 the February order[3] that the Central policy issued by Central to Leonard Rosado entitled them to “primary coverage” under the holding of Pecker Iron Works of N.Y. v Traveler’s Ins. Co. (99 NY2d 391 [2003]).
Discussion
As an initial matter, the court notes that in its July order it granted leave to defendants to seek renewal in this declaratory judgment action as to the issue of whether the Central policy provides primary or excess coverage to the Herskowitz plaintiffs, pursuant to CPLR 2221 (e).[4]
Furthermore, neither party claims that any issues of fact or any ambiguities preclude determination of the issues at bar. Thus, the issue is properly before this court since it is well settled that the interpretation of unambiguous provisions of an insurance contract is a question of law for the court. (Vigilant Ins. Co. v Bear Stearns Cos., Inc., 10 NY3d 170 [2008].)
Renewal thus being granted the court determines the motion for summary judgment as follows.
“In order to determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue.” (BP A.C. Corp. v One Beacon Ins. Group, 8 NY3d at 716, citing State Farm Fire & Cas. Co. v LiMauro, 65 NY2d 369 [1985].) In the instant matter the court has reviewed two insurance policies that were in effect at the time of Leonard Rosado’s accident: (1) the Central policy which covered Leonard Rosado and those he contracted with to perform construction services; and (2) a policy from Indian Harbor Insurance Company that covered the Herskowitz plaintiffs (the Indian Harbor policy).
As stated by the Court of Appeals:
*431 “The anomaly involved in establishing a pecking order among multiple insurers covering the same risk arises from the fact that although the insurers contract not with each other but separately with one or more persons insured, each attempts by specific limitation upon the rights of its insured to distance itself further from the obligation to pay than have the others. The result has been characterized as ‘a court’s nightmare . . . filled with circumlocution’ (Carriers Ins. Co. v American Home Assur. Co., 512 F2d 360, 362), compared sarcastically to the ‘struggles which often ensue when guests attempt to pick up the tab for their dinner companions’ (Insurance Co. of N. Am. v Continental Cas. Co., 575 F2d 1070, 1071), and produced, it has been said, judicial decisions that are ‘difficult to interpret and in some instances impossible to reconcile’ CUnited Servs. Auto. Assn, v Empire Fire & Mar. Ins. Co., 134 Ariz 64, 65, 653 P2d 712, 713).” (State Farm Fire & Cas. Co. v LiMauro, 65 NY2d 369, 372, 482 [1985].)
Is it Primary or Excess Coverage?
In Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co., Pecker engaged the services of a subcontractor to provide labor, materials, and equipment for a construction project. The subcontractor agreed to name Pecker “as an additional insured” to its policy with the Travelers Indemnity Company of Connecticut. The subcontractor’s policy with Travelers provided that coverage of “those ‘additional insureds’ . . . would only be excess, unless [the subcontractor] ‘ha[d] agreed in a written contract for this insurance to apply on a primary or contributory basis.’ ” (99 NY2d at 393.) One of the subcontractor’s workers was injured on site and commenced a suit for damages. A dispute then arose concerning whether Travelers was obligated to provide Pecker with excess or primary coverage. As stated in Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co., at issue was simply whether the Traveler’s policy was primary or excess.[5]
According to the Court of Appeals, the issue turned on whether in the subcontractor’s contract with Pecker, the subcontractor had agreed in writing that its insurance coverage *432 would apply to Pecker on a primary basis, as was mandated to afford primary coverage by the terms of its insurance contract with Travelers. The Court of Appeals held that the subcontractor had agreed to provide Pecker with primary coverage. Because Travelers agreed and intended to provide the subcontractor with primary coverage, and because the subcontractor had agreed to make Pecker an additional insured, the Court of Appeals held that Travelers in turn must also provide primary coverage for Pecker. The Court held that “ ‘[additional insured’ is a recognized term in insurance contracts” and that “the ‘well-understood meaning’ of the term is ‘an “entity enjoying the same protection as the named insured,” ’ ” i.e., that the term “additional insured” as used in construction contracts means additional insured on a primary basis. (Id.; see also BP A.C. Corp. v One Beacon Ins. Group, supra.) Without analyzing the “other insurance” provisions contained in either policy, the Court of Appeals held that the term “additional insured” as used in construction contracts means additional insured on a primary basis.
In the instant matter, after a review of both the Central policy and the Indian Harbor policy, this court holds that the Central Policy covered the Herskowitz plaintiffs as “additional insureds.”
Almost identical to the Travelers policy provision issued to the subcontractor in Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co.,[6] the Central policy issued to Leonard Rosado at bar provided as follows: “Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or any other basis unless a contract specifically requires that the insurance be primary or you request that it apply on a primary basis.” (Central policy, amendment 14-2696 07 97.) Based on this Central policy provision, and based on the contract between Leonard Rosado as the subcontractor and the Herskowitz plaintiffs whereby Leonard Rosado agreed to name the Herskowitz plaintiffs as additional insureds on his policy of insurance, the obligation to cover the Herskowitz plaintiffs as additional insureds is triggered. Based on the Herskowitz *433 plaintiffs’ status as additional insureds under the Central policy, the Herskowitz plaintiffs have the same rights as Leonard Rosado under the Central policy. (Id.)
Furthermore, since that the Herskowitz plaintiffs have established their status as additional insureds under the Central policy, coverage afforded the Herskowitz plaintiffs under the Central policy is primary coverage.
A careful review of the opinion of the Court of Appeals in Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co. reveals that its decision was with due consideration of the terms of the subcontractor’s policy which required a written, express designation of primary coverage be contained in the contract between the general contractor and subcontractor. (Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co., 99 NY2d at 393.) This court holds there is no difference between a “specific” requirement that the insurance be primary or an “express” designation of primary coverage in connection with a determination of whether coverage is primary or excess in this case. In the instant matter, by its terms, the Central policy, as the Travelers policy in the Pecker case, requires that the coverage is primary.
Is the Indian Harbor Policy Also Primary?
In the event this court made the determination the Central policy provides primary coverage, which it has, Central also argues in such event that both the Central policy and the Indian Harbor policy provide primary coverage and as such both policies should contribute equally to the defense costs in the underlying wrongful death action. This was not an argument propounded by Central in any of its prior submissions.[7] Plaintiffs’ opposition papers ignores this final, and perhaps new, issue stopping their analysis at Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co. Nonetheless, in order to render a final and complete ruling in this declaratory judgment action, this court must also determine whether both the Central policy and the Indian Harbor policy provide primary coverage, and if so, whether or not each policy should contribute equally to the costs associated with the settlement of the underlying wrongful death action.
The fact that one policy may be primary insurance does not preclude a determination that another policy also provides primary coverage. Indeed, in BP A.C. Corp. v One Beacon Ins. *434 Group, the Appellate Division, First Department held that Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co. stood for the proposition that all additional insured coverage was primary to any policy under which such additional insured was a named insured, regardless of the terms of the policies’ “other insurance” clauses. (BP A.C. Corp. v One Beacon Ins. Group, 33 AD3d 116 [1st Dept 2006].) However, the Court of Appeals modified the order of the First Department when it held that the “[i]n order to determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue” and thereafter reinstated the order of the trial court.[8] (BP A.C. Corp. v One Beacon Ins. Group, 8 NY3d at 716.) This ruling indicates that the decision in Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co. does not hold that all “additional insured” coverage is primary over any policy under which such additional insured was a named insured, regardless of the terms of the policies’ “other insurance” clauses. Otherwise, there simply would be no need to examine “all of the relevant policies at issue.” (BP A.C. Corp. v One Beacon Ins. Group, 8 NY3d at 716.) .
Not cited by either party, but discovered in the course of the court’s own research, the case of Harleysville Ins. Co. v Travelers Ins. Co. (38 AD3d 1364,1366-1367 [4th Dept 2007], Iv denied 9 NY3d 811 [2007]) has come to this court’s attention. In Harleysville Ins. Co. v Travelers Ins. Co., a case decided four years after Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co. (supra), the Appellate Division, Fourth Department, ruled that the carrier which issued the policy covering the “additional insured” was the sole primary insurer, and thus responsible for all costs incurred in defense and settlement of the underlying action, and that the additional insured’s primary carrier was obligated to provide excess coverage to its insured:
“[P]laintiff does not dispute that [the general contractor], an additional insured under its policy, is entitled to primary coverage. Rather, the dispute is whether, pursuant to the terms of the policies, Travelers’ [(general contractor’s primary carrier)] coverage of [the general contractor] is primary along *435 with plaintiff’s primary coverage of [the general contractor] as an additional insured or whether Travelers’ coverage of [the general contractor] is excess to plaintiff’s coverage. We have therefore examined ‘the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it . . . , as well as . . . the wording of its provision concerning excess insurance [(the “other insurance” clause)]’ . . . Pursuant to the ‘other insurance’ clauses in both policies, the policies provide primary coverage except that the coverage is excess where any other primary insurance is available to the insured for which the insured has been added as an additional insured by attachment of an endorsement. [The general contractor] is added as an additional insured on plaintiffs primary policy, and thus the excess clause is triggered in the Travelers policy but not in plaintiffs policy. We therefore conclude that the excess coverage clauses are not ‘deemed to cancel each other out’ and thus do not result in coinsurance. Rather, pursuant to the terms of the policies, Travelers’ coverage is excess to plaintiff’s coverage, and we therefore conclude that coverage under plaintiffs primary policy must be exhausted before Travelers is required to contribute under its policy.” (Harleysville Ins. Co. v Travelers Ins. Co., 38 AD3d 1364, 1366-1367 [2007] [citations omitted].)
Even though the issue of whether or not the Central policy is primary is controlled by the holding in Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co. (supra), similar to the determination by the Court in Harleysville Ins. Co. v Travelers Ins. Co., the issue of whether or not the coverage under the Indian Harbor policy is primary along with the coverage under Central policy is not controlled by the holding in Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co. (supra). They are two separate and distinct issues.
To determine whether the Indian Harbor policy also provides primary coverage along with the Central policy the court bears “the responsibility of determining the rights or obligations of parties” under the “insurance contracts based on the specific language of the policies.” (State of New York v Home Indem. Co., 66 NY2d 669, 671 [1985].)
A recent decision in the Appellate Division, Second Department also indicates that such an examination of the policies at *436 issue is appropriate.[9] In Osorio v Kenart Realty, Inc., a plaintiff brought an action against a landlord and tenant to recover damages for personal injuries he sustained while working on the leased premises. (Osorio v Kenart Realty, Inc., 48 AD3d 650 [2d Dept 2008].) In Osorio v Kenart, the tenant was contractually obligated to procure liability insurance and add the landlord as an “additional insured.” After Osorio commenced suit for his personal injuries, a dispute arose concerning which policy provided the landlord with primary coverage. Despite the fact that the landlord was an “additional insured” under the tenant’s policy, the Appellate Division, Second Department still examined the two policies at issue; in particular it examined each policy’s “other insurance” provisions. In doing so, the Court found that the plain wording of the tenant’s policy’s “other insurance” clause rendered the tenant’s policy excess only in “specific, enumerated circumstances,” which were not present, thus the Court held that the tenant’s insurer bore “the initial responsibility for defending and indemnifying [the landlord] in the underlying action.” (Id. at 653.)
This court has examined both the Central policy and the Indian Harbor policy and “the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it” (38 AD3d at 1367) and the wording of each policy’s respective “other insurance” clauses. Such examination reveals that the Indian Harbor policy, in comparison to the policy quoted above in Harleysville, is much broader in its coverage. The “other insurance” clause in the Indian Harbor policy provides as follows:
“4. Other Insurance
“If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A[10] or B of this Coverage Part, our obligations are limited as follows:
“a. Primary Insurance
“This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is *437 primary. Then, we will share with all other insurance by the method described in c. below.
“b. Excess Insurance
“This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
“(1) That is Fire, Extended Coverage, Builder’s Risk,1[11]1 Installation Risk or similar coverage for ‘your work’;
“(2) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owners; or
“(3) If the loss arises out of the maintenance or use of aircraft, ‘autos’ or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).
“When this coverage is excess, we will have no duty under Coverages A or B to defend the insured against any ‘suit’ if any other insurer has a duty to defend the insured against the ‘suit’. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured’s rights against all those other insurers.
“When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
“(1) The total amount that such other insurance would pay for the loss in the absence of this insurance; and
“(2) The total deductible and self-insured amounts under all other insurance.
“We will share the remaining loss, if any, with other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.
“c. Method of Sharing
“If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal *438 amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
“If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer’s share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.” (Indian Harbor policy § I\£ U 4.)
The language of this “other insurance” clause does not render the coverage of the Indian Harbor policy excess in this matter. More specifically, the Central policy is a general liability policy which is not the type of policy carved out from primary coverage in Indian Harbor policy § IX 1i 4 (c). This court also notes that this “other insurance” clause is virtually identical to the “other insurance” clause in Osorio v Kenart Realty, Inc., where the Appellate Division, Second Department also found the policy at issue to be primary.
Therefore based on the contents of the Central policy and the Indian Harbor policy this court concludes that the Indian Harbor policy coverage is primary along with the Central policy. (See B.F. Yenny Constr. Co., Inc. v One Beacon Ins. Group, 50 AD3d 1477, 1479 [4th Dept 2008] [pursuant to the “other insurance” and “method of sharing” provisions of the two insurance policies at issue, both the subcontractor’s policy that named the general contractor as an “additional insured” and the general contractor’s liability policy “have an obligation to provide primary coverage and to share equally in the costs of plaintiff’s defense and indemnification in the underlying action”]; see also Jefferson Ins. Co. of N.Y. v Travelers Indent. Co., 92 NY2d 363, 372 [1998] [in a dispute among three insurers regarding coverage of an automobile accident, both the policy of the car lessee that named the owner of the automobile as an “additional insured” and the liability policy of the owner of the car held to be “primary coinsures” of the owner of the vehicle].)
The only issue that remains is the “method of sharing” between the Central policy and the Indian Harbor policy. The Indian Harbor policy lays out a clear method for sharing. Neither party directs the court to the portion of the Central policy that provides for a “method of sharing”;[12] therefore the method cannot be determined herein. The court therefore reserves deci *439 sion on this specific issue. Nonetheless, the court directs the parties to the holding in Jefferson Ins. Co. of N.Y. v Travelers Indent. Co. (supra). In Jefferson Ins. Co., the Court of Appeals reiterated that in such cases where the “terms in two or more policies conflict — as two policies that purport to be excess over each other — insurers must contribute in the proportion their policies bear to the limit of coverage at that level.” (Id. at 372.) Thus, in the event the Central policy does not delineate a “method of sharing,” it would appear that in conjunction with above quoted language in Jefferson Ins. Co. of N.Y. v Travelers Indent. Co., and the fact that language of the Indian Harbor policy provides that “[i]n any of the other insurance does not permit contribution by equal shares, [it] will contribute by limits” (Indian Harbor policy § FV( If 4 [c]), the “method of sharing” to be implemented in this matter would mandate each insurer contribute in the proportion their policies bear to the total applicable limits of insurance of both insurers.
All other arguments raised but not specifically addressed herein are denied.
Accordingly it is ordered, adjudged, declared and decreed that defendant Central Mutual Insurance Company’s policy No. 7932303 provides primary coverage to the Herskowitz plaintiffs in the underlying matter known as Rosado v Briarwoods Farm, Inc. (Orange County index No. 5596/2001); and it is further ordered, adjudged, declared and decreed that Indian Harbor Insurance Company’s policy No. AIL045000010 provides primary coverage to the Herskowitz plaintiffs in the underlying matter known as Rosado v Briarwoods Farm, Inc. (Orange County index No. 5596/2001); and it is further ordered, adjudged, declared and decreed that both Indian Harbor Insurance Company and Central Mutual Insurance Company shall share equally in the costs associated with the settlement of the underlying action known as Rosado v Briarwoods Farm, Inc. (Orange County index No. 5596/2001).

. This action was originally commenced in Rockland County, where it bore index No. 4796/06, venue was transferred to this court by then Justice Lawrence Horowitz, where the underlying personal injury/wrongful death action was pending, “in the interests of justice.”

. On June 9, 2000, Leonard Rosado was injured, and thereafter died, while working at a job site located at Terranova Hill Development, lot No. 5, *429 Oakley Boulevard, Town of Garnerville, County of Rockland, State of New York. Leonard Rosado had been a contractor on the job site pursuant to a construction contract. The underlying personal injury/wrongful death action, Rosado v Briarwoods Farm, Inc. (Orange County index No. 5596/2001), was settled before trial.

. In the February order, the court found that the Central policy included an additional insured endorsement entitled “Additional Insured-Owners, Lessees or Contractors-Automatic Status When Required in Construction Agreement With You,” which covered any person or organization with whom the primary insured, Leonard Rosado, had contracted to perform construction services for and which the primary insured, Leonard Rosado, had agreed to in writing (by contract or agreement) to add to his Central policy as an additional insured. Thus, in the February order the court determined that because the Herskowitz plaintiffs had contracted with Leonard Rosado to be added to the Central policy as “additional insureds,” they were afforded coverage under the Central policy.

. All other findings contained in the February order, including that the Herskowitz plaintiffs, are “additional insureds” under the Central policy remain unchanged.

. “This case involves the relative obligations of two liability insurance carriers covering the same risk. The outcome turns on whether the insurance policy in question extends primary or merely excess coverage to ‘additional insureds.’ ” (99 NY2d at 392.)

. To provide a clear comparison the policy in Pecker provided “ ‘additional insureds,’ coverage would only be excess, unless [the subcontractor] ‘ha[d] agreed in a written contract for this insurance to apply on a primary or contributory basis.’ ” (Pecker Iron Works of N.Y., Inc. v Traveler’s Ins. Co., 99 NY2d at 393.)

. Indeed, the court notes and does not discredit plaintiffs’ argument that “Central’s position with regard to its coverage is ‘ever changing.’ ”

. Though the trial court’s decision was not reported, and thus unable to be examined, the First Department’s decision reflects that to the extent the parties sought a declaration that coverage was primary, the trial court held “that no such determination could be made without an examination of the other potentially applicable policies, which were not before the court.” (33 AD3d at 120.)

. Though the trial court’s decision was not dealing specifically with liability policies covering contractors and subcontractors, Osorio still deals with insurance contracts, and that fact that it deals with premises liability policies does not render its holding irrelevant.

. Coverage A provides for coverage for “Bodily Injury and Property Damage Liability” and is implicated herein.

. A builder’s risk policy is designed to provide coverage for buildings while under construction. It covers the contractor’s interest in materials at the job site before they are installed, materials in transit intended for the job and the value of the property being constructed until it is completed and accepted by the owner.

. Despite this court’s best efforts in examining the approximately 50 pages of single space, multiple columned pages that Central’s counsel submit *439 ted as the Central policy, no clauses concerning “method of sharing” or “contribution” could be found.