NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE LEGAL
PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ABROMOVITZ INVESTMENT PROPERTIES, L.L.C., *Plaintiff/Appellee,*

*v.*

RED EYED JACK SPORTS BAR, INC, a Nevada corporation; JACK
GALARDI and JANE DOE GALARDI, husband and wife; NEVADA
LAND COMMERCIAL REAL ESTATE, INC., *Defendants/Appellants,*

and

KEN MARCHIOL and JANE DOE MARCHIOL, husband and wife;
TANYA MARCHIOL; TEAM INVESTMENTS, LLC, an Arizona limited
liability company; MARCHIOL FAMILY LIMITED PARTNERSHIP, a
Colorado limited partnership, *Defendants/Appellees.*

No. 1 CA-CV 12-0869
FILED 4-17-2014

Appeal from the Superior Court in Maricopa County
No. CV2008-012200
The Honorable Eileen S. Willett, Judge

**AFFIRMED IN PART; REVERSED IN PART**

COUNSEL

Moyes Sellers & Hendricks, Phoenix
By Keith L. Hendricks, Stephen Brower, Louis D. Lopez

*Counsel for Plaintiff/Appellee*

Dickinson Wright/Mariscal Weeks PLLC, Phoenix
By Timothy J. Thomason, Michael J. Plati

*Counsel for Defendants/Appellants*

Bonnett Fairbourn Friedman & Balint PC, Phoenix
By William G. Fairbourn, William F. King

*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Maurice Portley joined.

---

**N O R R I S,** Judge:

**¶1**　　　　This appeal arises out of claims that Red Eyed Jack Sports Bar, Inc. ("REJ"), through Jack Galardi and real estate broker Nevada Land Commercial Real Estate, Inc., (collectively, "REJ defendants") attempted to sell commercial real property to Abromovitz Investment Properties, L.L.C., even though, as the superior court found, Marchiol Family Limited Partnership ("MFLP"), and not REJ, owned it. On appeal, the REJ defendants argue the superior court should not have found them liable to Abromovitz for breach of contract, fraud, and breach of fiduciary duty or liable to MFLP for the attorneys' fees it incurred in proving that it, and not REJ or Abromovitz, owned the property. For the following reasons, we affirm the superior court's judgment except for that portion of the judgment finding Galardi personally liable to Abromovitz for REJ's breach of contract.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　In 2002, Galardi and Ken Marchiol purchased commercial real property in downtown Phoenix ("the Property"). Galardi contributed $623,000 of the $1.2 million purchase price, and Marchiol contributed $577,000. Despite their unequal contributions, Galardi and Marchiol agreed the Property would be titled in the name of REJ and they would

2

each own 50% of the shares.[1]  At the time, Galardi was the sole owner of REJ.[2]  Despite repeated requests, Galardi never issued the shares to Marchiol because Galardi was "very busy."

¶3        In 2004, REJ conveyed the Property by warranty deed ("the 2004 deed") to MFLP -- an entity created by Marchiol for his children.  The county recorder's office rejected the deed, preventing its recordation.[3] Tanya Marchiol, Marchiol's sister, then sent the deed to Marchiol's mother to hold for safekeeping.  Although Galardi did not remember signing the 2004 deed conveying the Property to MFLP and at various times asserted the deed was fraudulent, the superior court found the deed to be a valid conveyance and quieted title of the Property in favor of MFLP.[4]

¶4        In 2007, despite having previously conveyed the Property to MFLP, REJ listed the Property for sale with Nevada Land through its owner, Nevada-licensed broker Alberto Jauregui.[5]  Abromovitz contacted Nevada Land in February 2008 and began negotiating a purchase price for the Property.  From that point forward, Jauregui, on behalf of Nevada

---

[1]Galardi and Marchiol presented conflicting testimony whether they had agreed they would each own 50% of REJ or 50% of the Property.  This distinction, however, is immaterial to the issues we resolve on appeal.

[2]Galardi acted for REJ at all relevant times unless otherwise noted.

[3]The record fails to explain why the county recorder rejected the deed, but the parties presented evidence at trial suggesting the recorder likely rejected it because it was on the wrong type of paper and/or lacked an affidavit of value.  *See* Ariz. Rev. Stat. ("A.R.S.") § 11-1133 (Supp. 2013).

[4]On appeal, the REJ defendants do not challenge the superior court's ruling as to the validity of the 2004 deed.

[5]The Property had been mostly vacant since mid-2005. Galardi operated a club on the Property from 2003 through mid-2005; Marchiol was not an owner of or otherwise involved in the club.  Galardi's club did not make rental payments to REJ, MFLP, Marchiol, or any other entity for its use of the Property.

Land as broker for REJ, conducted all discussions and negotiations with Abromovitz regarding the Property. And, Jauregui and Nevada Land conducted those discussions and negotiations with Abromovitz at the direction of Galardi, who in turn was acting as REJ's agent.

**¶5** Marchiol learned that Galardi was trying to sell the Property, and he, through his attorney in Colorado and Tanya, recorded the 2004 deed on March 17, 2008.[6] On March 27, 2008, REJ entered into a purchase contract to sell the Property to Abromovitz.

**¶6** As discussed in more detail below, REJ did not convey the Property to Abromovitz. As relevant here, Abromovitz sued REJ for breach of contract and breach of the covenant of good faith and fair dealing and the REJ defendants for breach of fiduciary duty, fraud, negligent misrepresentation, and consumer fraud. REJ and Galardi cross-claimed against MFLP to quiet title and MFLP cross-claimed against REJ and Galardi for declaratory relief, quiet title, indemnification, and attorneys' fees.

**¶7** The superior court awarded Abromovitz $2,924,800 in damages against the REJ defendants and $429,038.50 in attorneys' fees and costs against Galardi and REJ. The court quieted title to the Property in favor of MFLP and awarded it $518,836.81 in attorneys' fees, plus costs, against the REJ defendants.

## DISCUSSION

I.    Abromovitz's Breach of Contract Claims Against REJ

**¶8** On appeal, REJ argues it did not breach the purchase contract with Abromovitz because the purchase contract did not obligate it to either convey title to the Property free of MFLP's claim or tender a deed to Abromovitz on or before the close of escrow. Reviewing the issue de novo, we disagree. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003) (interpretation of contract is question of law reviewed de novo).

---

[6]Marchiol was able to record the deed because his lawyer in Colorado added a statutory reference to the deed under A.R.S. § 11-1134(B)(1) (Supp. 2013) exempting it from the affidavit of value requirement. *See* A.R.S. § 11-1133.

¶9        REJ and Abromovitz agreed to a choice of law provision, and thus, Nevada law governs the validity, construction, and performance of the purchase contract.  Section 8.1(a) of the purchase contract provided that if Abromovitz notified REJ of defects found in the preliminary title report:

> Seller shall have until the Close of Escrow in which to advise Buyer that:
>
> (i) Seller shall remove any objectionable exceptions to title . . . on or before the Closing Date; or
>
> (ii) Seller shall not cause the exceptions to be removed.
>
> If Seller advises Buyer that it shall not cause the exceptions to be removed, Buyer shall have until the Close of Escrow to elect, as [its] sole remedy, to:
>
> (x) proceed with the purchase and acquire the Property subject to such exceptions without reduction in the Purchase Price; or
>
> (y) terminate this Agreement by written notice to Seller and Escrow Holder, in which case the Deposit and any interest thereon shall be returned to Buyer and the cancellation costs shall be divided equally between the Buyer and Seller.

¶10        The purchase contract did not define "Close of Escrow," but Jauregui, who drafted the contract, testified he used "Close of Escrow" and "Closing Date" synonymously in the contract.  The purchase contract defined the "Closing Date" as 15 days after the expiration of the due diligence period but, in any event, no later than May 15, 2008.  Based on these provisions, Jauregui testified he believed the closing date should have been May 12, 2008.  A representative of the title company handling the escrow sent an email to Jauregui, however, that identified May 13, 2008 as the close of escrow.  The record contains no evidence the REJ

defendants ever objected to either May 12 or May 13 as the date for the close of escrow. For purposes of this appeal, whether escrow was to close on May 12 or May 13 is immaterial as it had to close no later than May 15.

¶11 On April 4, 2008, after the title company informed Abromovitz of the 2004 deed, Mark Abromovitz, Abromovitz's principal ("Mark"), called Jauregui who, according to Mark, told him "it was an ex-partner of Jack Galardi's who had gotten wind of the sale and was trying to stop it." Mark testified that Jauregui assured him "it's a fraudulent deed, and we're going to get it cleared up." Mark followed up with an email to Jauregui on April 8, 2008, and Jauregui again confirmed they were "working on trying to resolve the title issue on the fraudulent deed recorded." By providing these assurances, REJ, through Jauregui, thus elected to resolve the issue with the 2004 deed by removing it or having it removed by May 12 or May 13, 2008.[7] Accordingly, pursuant to the purchase contract, Abromovitz deposited the remainder of the purchase price into escrow on May 9, 2008.

¶12 REJ was unable to remove the 2004 deed by the close of escrow. On May 16, 2008, REJ attempted to rescind its election to remove the 2004 deed by sending a letter to Abromovitz stating the exception would not be removed and advising it that, pursuant to Section 8.1 of the purchase contract, it could either terminate the contract or acquire the Property subject to the 2004 deed. The superior court found REJ's letter was untimely and had no effect on the obligations between the parties.

¶13 On appeal, REJ argues it did not breach the purchase contract because it acted pursuant to Section 8.1(a) of the contract and Abromovitz could only agree to go forward with the purchase subject to the 2004 deed or obtain a return of its deposit. We disagree. As the superior court found, REJ sent the letter after the May 15 close of escrow, and thus, its attempt to rescind its election to remove the 2004 deed came too late; by then, REJ had already materially breached the purchase contract -- which contained a "time is of the essence" clause -- by failing to remove the 2004 deed.[8] *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240

---

[7]Abromovitz and Jauregui discussed extending the closing date, but they did not reach an agreement to do so.

[8]The superior court concluded REJ materially breached the agreement by "failing to tender a deed in recordable form into escrow

(Nev. 1987) (breach of contract arises when party materially fails to perform duty imposed by agreement (citation omitted)); *accord Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975) (party is liable for breach of contract when it fails to keep agreement). Thus, the superior court properly found REJ breached the purchase contract.

II.     Galardi's Personal Liability for REJ's Breach of the Purchase Contract

¶14     On appeal, Galardi argues the superior court should not have found him personally liable for REJ's breach of contract. We accept the superior court's findings of fact unless they are clearly erroneous but review its conclusions of law de novo. *Powers v. Guaranty RV, Inc.*, 229 Ariz. 555, 562, ¶ 26, 278 P.3d 333, 340 (App. 2012) (citation omitted). For the following reasons, we agree with Galardi.

¶15     The superior court did not explain why it found Galardi personally liable for REJ's breach of contract. At trial, Abromovitz argued Galardi was personally liable because he was acting for an undisclosed principal -- specifically, an alleged partnership between Galardi and Marchiol -- in selling the Property. Although the REJ defendants alleged in their answer to Abromovitz's second amended complaint and in the joint pretrial statement that if the superior court found a partnership between Galardi and Marchiol, then Galardi had entered into the purchase contract with either the express or implied permission of Marchiol or within the scope of that partnership, Galardi testified at trial that he entered into the purchase contract *on behalf of* REJ and the purchase contract reflects that. Further, Galardi's subjective belief about his arrangement with Marchiol does not change the reality of his dealings on

_____

prior to the Closing Date" as required by Section 6.1 of the purchase contract. REJ argues its failure to tender the deed was not a breach of contract because it would have been a "futile act." (internal quotation marks omitted). Although related, we construe the true nature of the breach to be that REJ failed to remove the 2004 deed before the close of escrow or timely elect its option to notify Abromovitz it would not remove the 2004 deed.

behalf of REJ with Abromovitz. As between Galardi and Abromovitz, REJ was always a fully disclosed principal.[9]

**¶16** Abromovitz further argues REJ's corporate form was not sufficient to protect Galardi from personal liability. As acknowledged by Abromovitz in its omnibus response to the REJ defendants' four motions for judgment as a matter of law, however, "evidence of alter ego or piercing the corporate veil . . . was not raised in the Joint Pre-trial or pled as a claim. As such, it has not been litigated and no ruling should be entered on the issue." From our review of the record, we agree Abromovitz did not raise an alter ego/piercing the corporate veil claim in the superior court, and the superior court did not decide such a claim. Therefore, the issue is not properly before us. *See Sobol v. Marsh*, 212 Ariz. 301, 303, ¶ 7, 130 P.3d 1000, 1002 (App. 2006) (party generally cannot argue legal issues on appeal not specifically presented to superior court (citation omitted)).

**¶17** Finally, Abromovitz argues Galardi should be personally liable because he was not an officer, employee, or shareholder of REJ when he personally promised to clear the Property's title. Galardi, however, did not directly communicate with Abromovitz. As explained, *supra* ¶ 4, acting as REJ's broker and at the direction of Galardi in his capacity as REJ's agent, Nevada Land promised Abromovitz that REJ would clear the Property's title. Further, although we agree the record reflects Galardi was not an officer of REJ at this time, this argument ignores that Galardi was acting as REJ's agent in the negotiations with Abromovitz and the promise to clear title was made on behalf of REJ as part of the same transaction. As discussed, *supra* ¶ 15, Galardi was an agent for a disclosed principal and therefore not personally liable for REJ's breach of the purchase contract. *See Seigworth v. Nevada*, 539 P.2d 464, 466 (Nev. 1975) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."(citation omitted)); *accord Ferrarell v. Robinson*, 11 Ariz. App. 473, 475, 465 P.2d 610, 612 (1970) ("One who signs an agreement as the agent of a fully disclosed principal is not a party to

---

[9]Abromovitz similarly asserts Galardi was personally liable even if a partnership did not exist because an individual is liable for a contract he or she enters on behalf of a non-existent entity. We reject this argument because, as already discussed, the record reflects Galardi signed the purchase contract on behalf of REJ.

that agreement and thus incurs no personal liability for the principal's breach of that agreement." (citations omitted)).

**¶18** For the foregoing reasons, the superior court should not have found Galardi personally liable for REJ's breach of contract.[10] Therefore, we reverse that portion of the judgment finding Galardi personally liable for REJ's breach of contract.[11]

III. Abromovitz's Claim for Breach of Fiduciary Duty Against Nevada Land

**¶19** On appeal, Nevada Land argues the superior court misapplied the law when it found Nevada Land liable for breach of fiduciary duty by failing to disclose to Abromovitz information regarding REJ's inability to perform and failing to deal fairly with other parties to the transaction. We disagree. Although Abromovitz entitled its claim against Nevada Land "Breach of Fiduciary Duty," Abromovitz generally alleged breach of duties owed by real estate licensees to other parties and further clarified the scope of its claim asserting "Breach of Real Estate Broker's Duties" before trial. Indeed, the superior court found Nevada Land liable for breach of duty and found Nevada Land had "breached its duties as a real estate broker owed to Abromovitz." The superior court based its decision on the duties owed (and here, breached) by an Arizona real estate licensee[12] to third parties under applicable statutes, regulations, and case law. *See* Ariz. Admin. Code ("A.A.C.") R4-28-1101(A) (licensee

---

[10]At oral argument, Galardi argued that if we concluded the superior court should not have found him personally liable for REJ's breach of contract, then we must also vacate the fee award against him. Galardi did not raise this argument in his briefing on appeal and therefore prevented Abromovitz from responding to it. Thus, we deem the argument waived. *See Mitchell v. Gamble*, 207 Ariz. 364, 369-70, ¶ 16, 86 P.3d 944, 949-50 (App. 2004) (arguments raised for first time at oral argument are generally untimely and deemed waived (citations omitted)).

[11]Our conclusion here applies equally to Galardi's personal liability for REJ's breach of the covenant of good faith and fair dealing.

[12]Although Nevada Land was not licensed in Arizona, its activities in connection with the sale of the Property required it to be an Arizona licensee. *See generally* A.R.S. § 32-2122 (2012).

must deal fairly with other parties to transaction); A.A.C. R4-28-1101(B) (requiring brokers to disclose, *inter alia*, "any information that the seller . . . is or may be unable to perform"); *Lombardo v. Albu*, 199 Ariz. 97, 100, ¶¶ 12-13, 14 P.3d 288, 291 (2000) (ability to close goes to heart of transaction, is not confidential information, and requires disclosure to third parties (citations omitted)).[13]  Based on the evidence presented, the superior court properly found Nevada Land had breached the legal duties it owed to Abromovitz under Arizona law, regardless of the title Abromovitz gave to this claim in its pleadings.

IV.    Abromovitz's Fraud Claims Against REJ, Galardi, and Nevada Land[14]

**¶20**        The REJ defendants argue the superior court should not have found they defrauded Abromovitz because three of their representations were not material or relied upon.[15]   *See Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, ¶ 18, 985 P.2d 556, 562 (App. 1998) (listing elements of fraud (citation omitted)).  We disagree.  See *supra* ¶ 14 for the applicable standard of review.

---

[13]These duties are remarkably similar to duties imposed on real estate licensees in Nevada.  *See* Nev. Rev. Stat. Ann. § 645.252 (West 2013).   Indeed, Nevada Land had Abromovitz sign an agreement acknowledging the duties Nevada Land owed to the parties in the transaction under Nevada law.

[14]Although Nevada law governs the breach of contract claim, *supra* ¶ 9, the parties do not dispute that Arizona law governs the fraud claims.  *See Winsor v. Glasswerks PHX, L.L.C.*, 204 Ariz. 303, 306-07, ¶¶ 9-10, 63 P.3d 1040, 1043-44 (App. 2003) (claims arising out of tort usually governed by forum state, although choice of law provision may apply if resolution of claims requires interpretation of contract (citations omitted)).

[15]We only address materiality and reliance because the REJ defendants only challenged these two elements.

**¶21**		The superior court concluded the REJ defendants[16] defrauded Abromovitz by making statements they knew were false and disclosing some facts while concealing others. *See Hill v. Jones*, 151 Ariz. 81, 85, 725 P.2d 1115, 1119 (App. 1986) (nondisclosure given same legal effect as fraud and misrepresentation). Although the superior court did not specifically state which facts directly supported its conclusion, it made factual findings -- all amply supported by the evidence at trial -- that supported its conclusion. Specifically, the court found, *inter alia*, REJ had misrepresented it owned the Property, the Property was not encumbered, and it could convey the Property. The court also found the REJ defendants had misrepresented that the 2004 deed was "fraudulent" and they were "working on resolving the [issue,]" and had failed to disclose they knew Marchiol had not and was not going to consent to selling the Property. Additionally, the court found the REJ defendants had failed to disclose that Galardi had entered into the contract on behalf of REJ in an effort to force Marchiol to buy him out of the Property.

**¶22**		Although the REJ defendants argue on appeal their representations to Abromovitz -- the 2004 deed was fraudulent and they were working on resolving  it -- and their failure to disclose REJ lacked authority to convey the Property without Marchiol's approval (collectively, "the three frauds") were immaterial, the record demonstrates otherwise.[17]  The three frauds were material because REJ's ability to

---

[16]On appeal, the REJ defendants have combined their arguments regarding common law fraud, negligent misrepresentation, and consumer fraud even though the superior court only found Galardi and Nevada Land liable for common law fraud. We only address the common law fraud claim because, although these claims incorporate certain similar elements, the elements of the common law fraud claim are the most rigorous.

[17]The REJ defendants only challenge the three frauds, but the record amply supports the superior court's conclusion they had defrauded Abromovitz based on their misrepresentation that REJ owned the Property and their failure to disclose Galardi had entered the contract on behalf of REJ to force Marchiol to buy him out. Indeed, the REJ defendants knew they needed Marchiol's permission to sell the Property, and they were aware of a dispute between Galardi and Marchiol about the Property *before* REJ entered into the purchase contract with Abromovitz. Moreover, Galardi admitted he entered into the purchase contract with

convey the Property and the existence of a known superior claim to the Property go to the underlying purpose of the purchase contract.

**¶23** Abromovitz also presented ample evidence it relied on the three frauds (and others) both before it entered the purchase contract with REJ and after. Based on the REJ defendants' representations and omissions, Abromovitz entered into the purchase contract, deposited $250,000 of nonrefundable earnest money into escrow, spent time and money conducting due diligence, let its earnest money "go[ ] hard," and eventually fully performed under the purchase contract by depositing the remainder of the purchase price into escrow.

V. Lost Profits Award to Abromovitz

**¶24** On appeal, the REJ defendants argue the superior court should not have awarded Abromovitz lost profits on either the breach of contract or the fraud claims. We disagree. See *supra* ¶ 14 for the applicable standard of review.

A. Lost Profits Causation

**¶25** The REJ defendants first argue Abromovitz failed to prove a causal nexus between their conduct and the awarded lost profits. They essentially argue it would have been impossible for Abromovitz to earn profits from the Property because MFLP owned it and, therefore, the REJ defendants did not cause the lost profits. We disagree.

**¶26** REJ, through Galardi and with the assistance of Nevada Land, entered into a contract to sell property to Abromovitz that it had already conveyed to MFLP. In connection with this transaction, the REJ defendants made various misrepresentations to Abromovitz. REJ could have resolved its differences with Marchiol and obtained the Property

---

Abromovitz on behalf of REJ to force Marchiol to buy him out of the Property, and Nevada Land tried to negotiate a deal between Galardi and Marchiol in which Marchiol would have bought out Galardi after REJ entered into the contract with Abromovitz. Although the REJ defendants have not addressed these findings on appeal, they are more than sufficient to sustain the superior court's conclusion the REJ defendants defrauded Abromovitz.

from MFLP -- albeit perhaps at an unfavorable price. If it had done so, REJ would have been able to fulfill its obligations to Abromovitz.[18] We therefore reject the REJ defendants' argument they cannot be liable for lost profits. But for REJ's refusal to clear the title and perform under the purchase contract, Abromovitz would have been able to purchase and develop the Property. Thus, Abromovitz presented sufficient evidence REJ, through Galardi and with the assistance of Nevada Land, caused its lost profits.

        B.      Reasonable Certainty of Lost Profits

**¶27**        The REJ defendants also argue the superior court should not have awarded Abromovitz lost profits because Abromovitz failed to prove lost profits with reasonable certainty. We disagree.

**¶28**        To recover lost profits, a party must establish "a reasonably certain factual basis" for computing lost profits. *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 184, 680 P.2d 1235, 1245 (App. 1984) (quoting another source). A party need not establish lost profits with absolute certainty, but "the court or jury must be guided by some rational standard in making an award." *Id.* Once a party has proven the right to damages, the amount of damages may be proven to "a lesser degree of certainty." *Short v. Riley*, 150 Ariz. 583, 585, 724 P.2d 1252, 1254 (App. 1986) (citation omitted). "The evidence required to prove loss of future profits depends on the individual circumstances of each case . . . ." *Id.* at 586, 724 P.2d at 1255.

**¶29**        In this case, Abromovitz offered expert testimony from a forensic economist, who calculated the value of the Property's earning capacity using a discounted cash flow ("DCF") model. A DCF model is an

---

[18]The REJ defendants cite *Keister v. Talbott*, 391 S.E.2d 895 (W. Va. 1990), in support of their argument they did not cause Abromovitz's lost profits, but that case is factually distinguishable. In *Keister*, a jury found an attorney liable for malpractice for erroneously advising the purchasers of property that the property had mineral rights. *Id.* at 897-98. The court concluded the attorney had not caused the purchasers to lose the property's mineral rights because, even if the attorney had correctly examined the title, the property had already lost the mineral rights. *Id.* at 900. Here, the REJ defendants' conduct deprived Abromovitz of the Property.

appropriate method for estimating the present value of regular or irregular income. *See generally* Appraisal Inst., *The Appraisal of Real Estate* 539-58 (13th ed. 2008) (explaining DCF analysis and its application). The expert used methodologies to account for risk and uncertainty and adjusted for vacancy rates and collection losses. The expert calculated the lease for ten years -- a lease period common for that type of property. The expert assumed the Property would be leased in one year following purchase, and, at the time Abromovitz entered the purchase contract, it already had a tenant interested in the Property. Further, Abromovitz had successfully leased properties in the same geographic area, which supported his claim at trial he had the ability to successfully lease the Property. Thus, Abromovitz presented sufficient evidence the lost profits were reasonably certain.

### C. Lost Profits Awarded for Breach of Contract

**¶30** As a general matter, lost profits is a measure of compensatory damages (Nevada), *Rd. & Highway Builders, LLC v. N. Nev. Rebar, Inc.*, 284 P.3d 377, 382 (Nev. 2012) (citation omitted), or consequential damages (Arizona), *McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 171 Ariz. 207, 211, 829 P.2d 1253, 1257 (App. 1992) (citations omitted), available for breach of contract.

**¶31** REJ argues the superior court should not have awarded Abromovitz lost profits on its breach of contract claim for four different reasons. As we explain, we disagree with each reason.

**¶32** First, REJ argues it did not willfully breach the contract. REJ provides no authority that a breach must be willful in order to support a lost profits award. Nevertheless, the record supports REJ willfully breached the purchase contract. See discussion *supra* ¶¶ 21, 26.

**¶33** Second, REJ argues Abromovitz did not present evidence the Property's market value exceeded the contract price. Abromovitz, however, did not need to present evidence the market value exceeded the contract price because it pursued, and the superior court awarded, damages based on a lost profits theory, rather than market value.

**¶34** Third, REJ argues the Property's market value encompassed potential future rental profits. Although REJ mentioned this point in its motion for judgment as a matter of law regarding plaintiff's damages and its renewed motion for judgment as a matter of law, REJ did not present

any evidence at trial, either through its own valuation expert or through cross-examination of Abromovitz's expert, that the market value of the Property encompassed future lost profits. Further, the authority REJ cites for this argument merely states "the potential for profit bears on market value." 3 Dan B. Dobbs, Dobbs Law of Remedies § 12.11(1), at 289 (2d ed. 1993).[19] That profit capability might bear on market value does not preclude recovery for lost profits here.

¶**35** Fourth, REJ argues neither it nor Abromovitz contemplated non-market damages, specifically lost profits. Lost profits are available for breach of contract if they are within the contemplation of the parties. *See Gen. Electric Supply Co. v. Mt. Wheeler Power, Inc.*, 587 P.2d 1312, 1313 (Nev. 1978) (lost profits sustained as damages reasonably foreseeable and within contemplation of parties); *accord Short*, 150 Ariz. at 585-86, 724 P.2d at 1254-55 (lost profits sustained as damages naturally flowing from breach of contract and within contemplation of parties). Abromovitz presented evidence REJ knew that it was going to use the Property for income-producing purposes. First, Nevada Land, on behalf of REJ, specifically marketed the Property to breweries and business owners within two blocks of the Property. Second, Abromovitz requested the brewing equipment and fixtures that were in the Property to be part of the sale. Further, REJ knew Abromovitz was a "player in the area" and owned rental properties in the same geographic area as the Property. Thus, based on the use for which REJ marketed the Property and the intended use for which Abromovitz entered into the purchase contract, Abromovitz presented sufficient evidence lost profits were within the contemplation of the parties. Based on the foregoing, the superior court properly awarded Abromovitz lost profits on its breach of contract claim.

> D. Lost Profits Awarded for Fraud

¶**36** The REJ defendants also argue, as a matter of law, lost profits damages are not available for fraud. Because consequential

---

[19]REJ also cites Dobbs for the proposition that "[i]f . . . lost profits are claimed, the plaintiff must further prove that the future profits were not encompassed within the determination of the property's market value *and* were 'contemplated' by the parties." (emphasis added). Dobbs, however, only supports the latter assertion. *See* Dobbs, *supra* ¶ 34, at 288-89.

damages are available for fraud and can include lost profits, we disagree.[20] *See Ulan v. Richtars*, 8 Ariz. App. 351, 359, 446 P.2d 255, 263 (1968) ("A defrauded party is entitled to all out-of-pocket losses[,] . . . benefit of his bargain[,] . . . and . . . all consequential damages." (quoting another source)); Restatement (Second) of Torts § 549(1)(b) (1977) (recipient of fraud entitled to pecuniary loss suffered as consequence of reliance on misrepresentation); 2 Dan B. Dobbs, Dobbs Law of Remedies § 9.2(3), at 557 (2d ed. 1993) ("Recoverable consequential or special damages also include loss of profits resulting from reliance on the representation . . . .").

¶37        The REJ defendants also argue the superior court should not have awarded lost profits because lost profits are not available as benefit-of-the-bargain damages.  Benefit-of-the-bargain damages, which here, would be calculated as "the difference between the value of the land at the time of the breach and the contract price," *Kammert Bros. Enters. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 308, 428 P.2d 678, 685 (1967) (citations omitted), however, are not the exclusive measure of damages for fraud. *Cole v. Gerhart*, 5 Ariz. App. 24, 26, 423 P.2d 100, 102 (1967) (in addition to "a normal measure of damages," such as benefit-of-the-bargain damages, other consequential damages may be granted that arise from the fraudulent conduct); *Ashley v. Kramer*, 8 Ariz. App. 27, 31, 442 P.2d 564, 568 (1968) ("We hold that 'consequential damage' is a proper measure of damages in a fraud action and that the defrauding party may not limit the proof of damages to the benefit of the bargain . . . .").  Not only are benefit-of-the-bargain damages not the exclusive measure of damages for fraud, lost profits resulting from reliance on the representation are recoverable.[21] Dobbs, *supra* ¶ 36, at 557; *cf. McAlister*, 171 Ariz. at 211, 829 P.2d at 1257 ("Consequential damages include lost future profits" in breach of contract

_____

[20]The REJ defendants also argue lost profits damages are not available for negligent misrepresentation and consumer fraud.  Because lost profits are available for fraud, we need not address whether lost profits would likewise be available on these claims.

[21]The REJ defendants also argue the superior court should not have awarded Abromovitz benefit-of-the-bargain damages because the parties did not consummate the bargain and benefit-of-the-bargain damages may not be awarded against non-parties to the bargain.  We need not address these arguments because, as discussed, benefit-of-the-bargain damages are not the exclusive measure of damages for fraud.

action. (citation omitted)). Based on the foregoing, the superior court properly awarded Abromovitz lost profits on its fraud claim.

VI.     Attorneys' Fees Award to MFLP

¶38     On appeal, REJ and Galardi argue the superior court should not have awarded attorneys' fees to MFLP. Although we agree with certain aspects of their argument, we conclude the superior court properly awarded fees to MFLP.

        A.     Attorneys' Fees Under A.R.S. § 33-411.01

¶39     REJ and Galardi first argue the superior court misapplied A.R.S. § 33-411.01 (2007) when it awarded attorneys' fees against Galardi personally. We agree. A.R.S. § 33-411.01 provides:

> Any document evidencing the sale, or other transfer of real estate . . . shall be recorded by the *transferor* . . . . In lieu thereof, the *transferor* shall indemnify the transferee in any action in which the transferee's interest in such property is at issue, including costs, attorney's fees and punitive damages.

(emphases added). REJ was the transferor in this case. *See* Black's Law Dictionary 1875 (9th ed. 2009) (Transferor means: "One who conveys an interest in property.").

¶40     Nevertheless, MFLP argues that because Galardi acted in bad faith and for his own self-interest, he should be deemed the transferor. We disagree. REJ owned the Property in 2004 and conveyed the Property to MFLP; thus, REJ, not Galardi personally, was the transferor under A.R.S. § 33-411.01. The statute only applies to the transferor, and therefore, REJ alone is liable for fees under A.R.S. § 33-411.01.

¶41     REJ next argues A.R.S. § 33-411.01 is inapplicable here because MFLP always possessed the deed. Perhaps recognizing that REJ possessed the deed when Galardi signed it, REJ then asserts in its reply brief that it satisfied the recording requirement when it relinquished possession of the deed to MFLP. REJ provides no authority in support of its position, and, in any event, "[w]hen statutory language is clear and

unambiguous, we give effect to it and do not use other methods of statutory interpretation." *Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.*, 217 Ariz. 606, 608, ¶ 6, 177 P.3d 867, 869 (App. 2008) (citation omitted). Thus, we decline to infer a relinquishment exception into A.R.S. § 33-411.01.

¶42 REJ alternatively argues the superior court should not have awarded fees under A.R.S. § 33-411.01 at all because only A.R.S. § 12-1103 (2003), which governs fee awards in quiet title actions, entitled MFLP to a fee award and MFLP failed to prove it had complied with the tender requirements of that statute (the "total bar argument"). REJ did not, however, raise the total bar argument in the superior court.

¶43 As relevant here, MFLP sought fees in the superior court under A.R.S. § 33-411.01 and did not seek fees under A.R.S. § 12-1103. In responding to MFLP's fee application, REJ and Galardi argued MFLP was not entitled to "seek any fees for claims related to its claim to quiet title" and that the superior court should have apportioned MFLP's fees. They further argued: "Any fee award to MFLP must, at a minimum, be reduced to reflect a proper apportionment. A reduction of at least 50% of MFLP's claimed total is in order." The superior court rejected REJ and Galardi's apportionment argument and awarded MFLP $518,836.81 in attorneys' fees and costs.

¶44 Thus, only in the context of arguing MFLP was required to apportion its fees did REJ mention A.R.S. § 12-1103. But, it did not argue the statute barred MFLP from recovering any fees under A.R.S. § 33-411.01. Accordingly, REJ's total bar argument is not properly before us. *See Sobol*, 212 Ariz. at 303, ¶ 7, 130 P.3d at 1002 (App. 2006) (party generally cannot argue legal issues on appeal not specifically presented to superior court (citation omitted)).

¶45 Even if we were to assume, however, that MFLP could not recover fees for its quiet title claim under A.R.S. § 33-411.01, REJ and Galardi did not renew their argument on appeal that MFLP should have been required to apportion its fees among its claims. Although they did mention it in passing in their reply brief, we will not consider arguments presented for the first time on appeal in the reply brief. *Anderson v. Country Life Ins. Co.*, 180 Ariz. 625, 636, 886 P.2d 1381, 1392 (App. 1994) (citation omitted). For the foregoing reasons, the superior court properly awarded fees against REJ, but not Galardi, under A.R.S. § 33-411.01.

B.      Attorneys' Fees Under A.R.S. § 12-341.01

¶46         MFLP argues in its answering brief that even if it was not entitled to be awarded fees against Galardi personally under A.R.S. § 33-411.01, it was nevertheless entitled to a fee award against him under A.R.S. § 12-341.01 (Supp. 2013) because the entire dispute arose out of the purchase contract with Abromovitz.  Although we disagree with MFLP's precise argument, we ultimately agree the dispute between Galardi and MFLP arose out of contract.[22]

¶47         Although MFLP was not a party to the purchase contract between REJ and Abromovitz, a party seeking fees under A.R.S. § 12-341.01 need not be a party to the contract, *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 30, ¶ 47, 126 P.3d 165, 177 (App. 2006) (citations omitted), and, in any event, the dispute between Galardi and MFLP arose out of various agreements between Galardi and Marchiol/MFLP, rather than REJ and Abromovitz.

¶48         As discussed, Galardi and Marchiol agreed to purchase the Property and title it in the name of REJ, with each owning 50% of the shares of REJ, which Galardi agreed to issue to Marchiol but never did.  Galardi and Marchiol also agreed that both of them would have to consent to selling the Property and would have equal input in the sales price.  Galardi and Marchiol further agreed Galardi would convey the Property to MFLP in 2004 in part to reimburse Marchiol for disparities in operating losses from their other, unrelated business ventures.  Although these agreements were not written and Galardi and Marchiol did business on a "handshake basis," the dispute between Galardi and Marchiol/MFLP, and their claims against each other, ultimately arose out of these agreements.  Therefore, MFLP was entitled to a fee award against Galardi under A.R.S. § 12-341.01.

---

[22]Galardi argues the superior court should not have awarded MFLP fees under A.R.S. § 12-341.01 because only A.R.S. § 12-1103 entitled it to a fee award and it failed to prove it had complied with the tender requirements of that statute.  As discussed above, *supra* ¶ 44, this argument is not properly before us.

## VII.  Attorneys' Fees on Appeal

**¶49**        The REJ defendants and Abromovitz each request attorneys' fees and costs on appeal pursuant to Section 20.6 of the purchase contract, which authorizes the prevailing party in an action to recover "its costs and expenses, including actual reasonable attorneys' fees."  Although we have vacated that portion of the judgment holding Galardi personally liable for REJ's breach of contract, under the "totality of the litigation test," Abromovitz is the prevailing party on appeal.  *See Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 134-35, ¶ 38, 272 P.3d 355, 365-66 (App. 2012).  Therefore, we award Abromovitz its reasonable attorneys' fees and costs on appeal against the REJ defendants except for those fees incurred by it in arguing Galardi was personally liable for REJ's breach of contract, contingent upon its compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

**¶50**        MFLP also requests its attorneys' fees on appeal pursuant to A.R.S. §§ 12-341.01 and 33-411.01.  Consistent with the foregoing discussion and contingent upon its compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure, we award MFLP its reasonable attorneys' fees against Galardi pursuant to A.R.S. § 12-341.01 and against REJ pursuant to A.R.S. § 33-411.01 and further find Galardi and REJ are jointly liable to MFLP for its costs on appeal.

**¶51**        For the foregoing reasons, we affirm the judgment of the superior court except for that portion of the judgment holding Galardi personally liable to Abromovitz for REJ's breach of contract.



Ruth A. Willingham · Clerk of the Court
FILED: MJT